**Webster Salasker LUCAS,
Plaintiff–Appellant,**

v.

**DEPARTMENT OF CORRECTIONS;
California Men's Colony–West,
Defendants–Appellees.**

No. 93–55227.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 16, 1995 *.

Decided Sept. 20, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

Webster Salasker Lucas, San Luis Obispo, CA, pro se for plaintiff-appellant.

Norman H. Sokolow, Deputy Attorney General, Los Angeles, CA, for defendants-appellees.

Before: ALARCON, FERNANDEZ, and RYMER, Circuit Judges.

PER CURIAM:

Webster S. Lucas, a California state prisoner, appeals pro se the district court's sua sponte dismissal of his 42 U.S.C. § 1983 action. Lucas alleged that the Department of Corrections and the California Men's Colony–West ("CMC–West") (collectively "appellees") showed deliberate indifference to his safety and serious medical needs when they maintained an unsafe prison drainage system and provided inadequate medical treatment to him after he fell into an uncovered drainage ditch. We have jurisdiction under 28 U.S.C. § 1291, and we vacate and remand for further proceedings.

■ Lucas contends that the district court erred by dismissing his action, prior to issuance and service of process, without giving Lucas a reasonable opportunity to address the merits of appellees' "special report." We agree.

Lucas is a state prisoner confined in California Men's Colony–West in San Luis Obispo, California. Lucas alleged in his complaint that he fell into an uncovered drainage ditch in front of the prison dormitory area on August 15, 1992, injuring his right foot and ankle. On September 2, 1992, Lucas filed a civil rights action in district court asserting violations of his Eighth Amendment rights to safe prison conditions and adequate medical care. Lucas requested injunctive relief requiring appellees to cover the exposed prison drainage system, and compensatory damages for the injuries he sustained. The district court granted Lucas leave to file his complaint without prepayment of the filing fees, and issued an order referring the case to a magistrate judge.

On September 23, 1992, before Lucas's complaint was served on appellees, the magistrate judge ordered appellees to investigate and file a special report on the subject matter at issue in Lucas's complaint. Noting that "proper and effective judicial processing of the claim cannot be achieved without additional information from officials responsible for the operation of the appropriate custodial institution," the court requested information regarding: (1) the "facts and circumstances" underlying Lucas's complaint; (2) whether the prison could or should take action to

resolve the issues raised by Lucas's complaint; and (3) whether prison officials were aware of any other complaints related to the prison drainage system. The court authorized appellees to conduct medical examinations and to interview Lucas and other witnesses. Moreover, the court directed that Lucas's complaint would not be served, nor would an answer or motion related to the complaint be filed, until appellees filed the special report.

Appellees filed the special report on December 1, 1992, along with a declaration from prison physician Dr. Bruce Faecher, copies of Lucas's medical records, and a declaration from CMC–West Associate Warden C.J. Salvato. Dr. Faecher declared that he had examined Lucas on a number of occasions after the alleged fall, and found him to be "fully functional" and "without any clinically identifiable disorders." Salvato's declaration described the CMC–West facility and drainage system, and the measures the prison administration planned to take to enhance inmate safety. Salvato further declared that since 1984, only two other inmates claimed injury in connection with the prison drainage system.

On December 4, 1992, the magistrate judge issued his preliminary report and recommendation, finding that "[i]t appears that plaintiff was given good medical care," and that "the ditches are not any threat at all to sighted persons ... provided only that they look where they are going." Lucas was given twenty days to provide written objections to the magistrate judge's report.

Lucas filed written objections to the magistrate judge's report and recommendation, and a response to appellees' special report, on December 18, 1992. Lucas contended that the district court would err by dismissing his action without allowing service of his complaint. Moreover, Lucas complained that the magistrate judge did not conduct an independent investigation of the drainage system, consider all available medical reports, or interview him or other witnesses. Lucas submitted additional medical records, pictures of the drainage ditches and a declaration from an inmate witness.

The magistrate judge issued his final report and recommendation on January 4, 1993, noting that he was "unpersuaded to change his opinion" by Lucas's objections. On January · 5, 1993, the district court adopted the findings, conclusions and the recommendation of the magistrate judge, and ordered judgment to be entered "dismissing the action on the merits."

In dismissing Lucas's Eighth Amendment claims on the merits, the district court explicitly considered materials outside the pleadings. The court found that based on the medical records submitted, Lucas was afforded adequate medical care. Moreover, the court adopted the magistrate judge's finding that Lucas's "civil rights were not violated by the existence or maintenance of the drainage ditches, the covering of which is in any event rendering the action as to them moot."

■ If in reviewing whether a complaint states an arguable claim, the district court considers matters outside the pleadings, the dismissal is in fact a summary judgment pursuant to Fed.R.Civ.P. 56. *See, e.g.,* Fed. R.Civ.P. 12(b)(6); *Tanner v. Heise,* 879 F.2d 572, 576 (9th Cir.1989) (construing defendant's motion to dismiss as a motion for summary judgment because district court considered plaintiff's affidavit). When the district court transforms a dismissal into a summary judgment proceeding, it must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings, and must afford a reasonable opportunity to present all pertinent material. *Garaux v. Pulley,* 739 F.2d 437, 438–39 (9th Cir.1984) (adopting rule of strict adherence to formal notice requirements where court converts motion to dismiss into one for summary judgment, and nonmoving party is appearing pro se); Fed.R.Civ.P. 12(b)(6). The notice requirement is consistent with the "rule of liberal construction of pleadings presented by *pro se* litigants," particularly when dismissal is considered. *Garaux,* 739 F.2d at 439.

■ Although the magistrate judge granted Lucas twenty days to respond to his report and recommendation, leave to respond did not substitute for explicit notice from the district court regarding the possibility of summary judgment, especially given Lucas's pro se status. *See id.* at 438–39; *see also Klingele v. Eikenberry,* 849 F.2d 409, 411–12 (9th Cir.1988) (holding that district courts must advise pro se prisoner litigants that they need to submit responsive evidence in opposition to summary judgment).

■ We appreciate the strain on judicial resources caused by the proliferation of pro se prisoner complaints, and the often considerable effort required to discern the nature of the inmate's allegations and to evaluate the proffered claims. Nevertheless, when the district court considers materials and facts outside of the pleadings, whether presented in a special report or otherwise, procedural requirements must be observed.

■ Here, the district court apparently sua sponte granted summary judgment for appellees. *See* Fed.R.Civ.P. 12(b)(6); *Garaux,* 739 F.2d at 438. Because the district court neither gave Lucas explicit notice that it intended to proceed as if on a motion for summary judgment, nor a reasonable opportunity to submit responsive evidence before rendering judgment, we vacate the district court's judgment and remand. *See id.* at 439–40; *Klingele,* 849 F.2d at 411–12.

Appellees correctly note on appeal that Lucas failed to name individual defendants in his complaint, and that his action, as currently written, is barred by state immunity. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978) (holding that a suit against a state and its Board of Corrections is barred by the Eleventh Amendment absent consent); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989); *Allison v. California Adult Auth.,* 419 F.2d 822, 823 (9th Cir.1969).

■ Unless it is absolutely clear that no amendment can cure the defect, however, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action. *See Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987); *Franklin v. Murphy,* 745 F.2d 1221, 1230 (9th Cir.1984); *see also Jackson v. Arizona,* 885 F.2d 639, 640 (9th Cir.1989) (noting that "an indigent plaintiff with an

arguable claim is entitled to issuance and service of process").

Lucas could amend his complaint to cure this defect. Thus, on remand the district court shall give Lucas specific notice of the complaint's deficiencies and an opportunity to amend. *See Noll,* 809 F.2d at 1448–49; *Franklin,* 745 F.2d at 1230. Moreover, if Lucas is able to state an arguable claim in his amended complaint, he is entitled to issuance and service of process. *See Jackson,* 885 F.2d at 640.

**VACATED AND REMANDED.**