Marcie LENOX, Plaintiff–Appellant,

v.

HEALTHWISE OF KENTUCKY, LTD.;
Fayette County Board of Education,
Defendants–Appellees.

No. 96–6319.

United States Court of Appeals,
Sixth Circuit.

Argued April 29, 1998.

Decided July 8, 1998.

Edward J. Smith (argued and briefed), Louisville, Kentucky, Wesley P. Adams, Jr., Weber & Rose, Louisville, Kentucky, for Plaintiff–Appellant.

Charles W. Arnold and Joel C. Morgan (briefed), Reinhardt, Morgan, Arnold & Isaacs, Lexington, Kentucky, David Florin, Beth M. Kramer and Thomas A. Guidoboni (briefed), Michaels, Wishner & Bonner, Washington, DC, for Defendant–Appellee Healthwise of Kentucky, Ltd.

J. Gary Bale (argued and briefed), Robert L. Chenoweth (briefed), Chenoweth Law Office, Frankfort, Kentucky, for Defendant–Appellee Fayette County Bd. of Educ.

Before: NELSON, BOGGS, and CLAY, Circuit Judges.

**OPINION**

BOGGS, Circuit Judge.

Plaintiff-appellant Marcie Lenox ("Lenox") appeals the district court's grant of summary judgment in favor of the defendant-appellees Healthwise of Kentucky, Ltd. ("Healthwise") and the Fayette County Board of Education ("FCBE"). The district court granted summary judgment on Lenox's federal claims

alleging violations of the Americans With Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983. After granting summary judgment on the federal claims, the district court refused to exercise supplemental jurisdiction over Lenox's state law claims and dismissed them without prejudice. For the reasons that follow, we affirm the judgment of the district court.

## I

Lenox was an elementary school teacher employed by FCBE. Each year, FCBE sponsored an open enrollment period during which FCBE employees could select one of several health plans approved by the state. The Kentucky Department of Personnel imposed certain conditions on participating insurance companies and the State Finance and Administration Cabinet was responsible for the formal contracting with the participating insurers. Each participating insurer agreed to a Master Group Contract that contained all the terms and conditions applicable to all employees accepting that insurer's plan.

During the open enrollment period for the 1993 Plan Year, Lenox selected Healthwise's plan for her coverage. Lenox had previously used the Humana plan. She switched to Healthwise because she and her husband were trying to start a family and under the Humana plan she had to use the Humana hospital. Lenox had heard that "you didn't want to have a baby at Humana." The Healthwise plan permitted her to use the OB/GYN and hospital of her choice.

On page sixteen of the booklet enumerating the terms of her coverage under the Healthwise Plan for the 1993 Plan Year was a section entitled "VI. EXCLUSIONS AND LIMITATIONS." Under this heading, the booklet stated that "[c]overage shall not be provided and no payment shall be made under the Plan for services rendered or expense incurred in connection with:" This language was followed by 42 numbered

paragraphs describing excluded procedures and services. Paragraph 16 excluded:

> Organ transplants other than bone marrow (excluding high-dose chemotherapy with autologous bone marrow transplants) kidney, liver (for children with biliary artesia), and cornea.

Shortly after selecting Healthwise, Mrs. Lenox became pregnant. During her pregnancy, Lenox developed a heart condition called cardiomyopathy[1] and experienced congestive heart failure. Initially, her condition was treated with medication, which the Healthwise plan covered. Unfortunately, Lenox's heart condition worsened after her son was born in August 1993 and she was not able to return to work for the start of the 1993 school year. Approximately three months after her son's birth, Lenox suffered a stroke. She was sufficiently impaired that she applied for disability retirement, which was granted in December 1993.

Lenox's stroke occurred around the time of the open enrollment period for FCBE employee health benefits for the 1994 Plan Year. As a recent FCBE retiree, under the Comprehensive Omnibus Budget Reconciliation Act ("COBRA") Lenox was entitled to select during the open enrollment period any of the health plans available to active employees. Lenox renewed coverage with Healthwise under terms similar to those applicable for the 1993 Plan Year. The 1994 plan contained an exclusion stating that:

> Coverage shall not be provided and no payment shall be made under the Plan for services rendered or expense incurred in connection with . . .
>
> . . . .
>
> 16. Any services or supplies related to: (1) organ transplants which are not listed as approved transplant services; including but not limited to heart, heart/lung, lung, kidney/pancreas, pancreas, adult liver, and bone marrow in conjunction with High Dose Chemotherapy for treatment of solid tumors such as breast cancer; (2) animal to human transplants; (3) artificial or me-

---

1. Cardiomyopathy is a "primary noninflammatory disease of the heart muscle, often of obscure or unknown etiology and not the result of ischemic, hypertensive, congenital, valvular or per-  icardial disease. It is usually subdivided into dilated, hypertrophic, and restrictive." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 268 (28th ed. 1994).

chanical devices designed to replace human organs; (4) keeping a donor alive for the transplant operation; (5) charges related to donor services; or (6) transplants otherwise excluded by the policy.

Initial efforts to treat Lenox after her stroke were unavailing. Eventually, her doctors told her that one treatment she should consider was a heart transplant. On March 4, 1994, Lenox experienced cardiac failure and was rushed to Jewish Hospital in Louisville, where doctors managed to stabilize her condition. She returned to Jewish Hospital again on March 11, 1994, to undergo testing to determine her suitability for a heart transplant. Jewish Hospital contacted Healthwise when Lenox was admitted for testing to determine her suitability for a transplant. Healthwise concedes that it denied coverage for all of Lenox's hospital bills from March 11, 1994 onward pursuant to the exclusion quoted above in its 1994 policy. Lenox claims that Healthwise denied coverage from March 4, 1994 onward.[2] In April, Healthwise rejected Mr. and Mrs. Lenox's appeal of the denial of coverage for costs relating to her heart transplant. Despite Healthwise's refusal to cover the procedure, Lenox eventually underwent a successful heart transplant.

## II

### A. *Lenox's Lawsuit*

In September 1994, Lenox filed a discrimination charge with the EEOC, alleging that her employer, FCBE, had violated the ADA by sponsoring a discriminatory health plan. In January 1995, she filed the present action against Healthwise and, after receiving her right to sue letter from the EEOC, amended her complaint to include FCBE. Lenox's amended complaint asserted various state law claims against Healthwise and FCBE and the following federal claims: (1) Healthwise violated the ADA by providing a health insurance policy that allegedly contains discriminatory, disability-based distinctions; (2) FCBE violated the ADA by participating in a contractual relationship with Healthwise that subjected Lenox to disability-based discrimi-

nation; (3) FCBE violated the Rehabilitation Act by engaging in a contractual relationship with Healthwise that subjected her to impermissible discrimination; and (4) FCBE violated 42 U.S.C. § 1983 by causing her to be subjected to a deprivation of her rights under the ADA.

### B. *Disposition Below*

Each defendant filed a summary judgment motion. The district court granted the defendants' motions as to Lenox's federal claims and refused to exercise jurisdiction over her state law claims and dismissed them without prejudice. The district court reasoned that Healthwise was not liable under Title I of the ADA because it was not Lenox's employer or an agent of her employer and, therefore, not a covered entity. Healthwise was not liable under Title II of the ADA either because it was not a "public entity." Additionally, Healthwise was not liable under Title III because even if Title III was interpreted to cover the discriminatory denial of insurance coverage, the refusal of Healthwise to cover various types of transplants, such as heart transplants, while covering other transplants did not amount to an impermissible "disability-based distinction" that violates the ADA. The district court further reasoned that since Healthwise did not discriminate against Lenox, FCBE was entitled to summary judgment on the section 1983, ADA, and Rehabilitation Act claims against it because all of these claims were predicated on the allegation that the Healthwise policy contained an impermissible disability-based distinction.

### C. *Arguments on Appeal*

On appeal, Lenox argues that Healthwise is a covered entity for purposes of Titles I and II of the ADA because FCBE and Healthwise are so interrelated for purposes of providing health coverage to FCBE employees that Healthwise is an agent of FCBE. Lenox also contends that the district court erred by concluding that Healthwise's

---

**2.** This discrepancy has no bearing on our resolution of Lenox's federal claims. She can pursue her dispute about coverage from March 4 to March 11 in a state law breach of contract claim since her state law claims were dismissed without prejudice.

456

policy is not a good or service offered by a "public accommodation" subject to Title III of the ADA. She points to several factors that allegedly establish that the policy is a good or service offered by a public accommodation. For instance, Lenox claims she accessed the policy through Healthwise's office because the booklet she was given during open enrollment encouraged FCBE employees to get additional information "by contacting the FCBE insurance benefits counselor or by contacting the particular insurance company." (Appellant's Reply Brief at 8). She also points to the fact that once she had selected Healthwise she had to send her application form directly to their office. (Appellant's Brief at 9). Finally, she argues that the district court erred in concluding that Healthwise's plan did not contain an impermissible disability-based distinction that violates the ADA. Lenox contends the Healthwise policy contains an impermissible disability-based distinction in violation of the ADA because it covers some types of transplants, but excludes coverage for heart transplants and other transplants that affect discrete categories of disabled people.

### III

#### A. *Title III of the ADA is Not Applicable to Lenox's Case*

The district court did not have the benefit of our *en banc* decision in *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006 (6th Cir.1997) (en banc), *cert. denied*, — U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998), when it granted summary judgment in this case. Nevertheless, the district reached the correct result and was surprisingly prescient to the extent its opinion comports with the reasoning of this court's subsequent *en banc* decision in *Parker*.

In *Parker,*an insurer was sued under the ADA because a long-term benefits plan it provided for employees of the plaintiff's employer allowed greater disability coverage for physical disorders than for mental or nervous disorders. The plaintiff claimed that this amounted to a disability-based distinction that violates the ADA. The district court granted the defendant summary judgment, but a panel of this court reversed the portion

of the district court's decision holding that contents of insurance policies are not governed by Title III of the ADA. *Parker v. Metropolitan Life Ins. Co.*, 99 F.3d 181, 187 (6th Cir.1996), *vacated,* 107 F.3d 359 (1997).

Sitting *en banc,* this court affirmed the decision of the district court in *Parker.* The analysis of the *en banc* majority began by examining the language of Title III of the ADA, which states:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The *en banc* majority explained that:

While we agree that an insurance office is a public accommodation as expressly set forth in § 12181(7), plaintiff did not seek goods and services of an insurance office. Rather, [she] accessed a benefit plan provided by her private employer and issued by MetLife. A benefit plan offered by an employer is not a good offered by a place of public accommodation [because] a public accommodation is a physical place and this Court has previously so held.

*Parker,* 121 F.3d at 1010–11. This distinction was elucidated by reference to Justice Department regulations interpreting Title III of the ADA:

The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided. In other words, a bookstore, for example, must make its facilities and sales operations accessible to individuals with disabilities, but is not required to stock Brailled or large print books. Similarly, a video store must make its facilities and rental operations accessible, but is not required to stock closed caption video tapes.

*Id.* at 1012 (quoting 28 C.F.R. pt. 36, app. B at § 36.307).

■ This portion of *Parker* makes clear that Lenox cannot succeed under Title III of the ADA. Even if the policy is deemed a good or service provided by a place of public accommodation, Lenox is not complaining about physical access to a place of public accommodation or her ability to avail herself of the goods and services offered at a place of public accommodation, such as an insurance company office. Rather, she is complaining about the mix of goods and services offered by an insurance company. Her complaint relates solely to the fact that the Healthwise policy does not cover heart transplants but does cover other transplants. The fact that the plan indicated that Lenox could direct questions to Healthwise's office and the fact that she was required to send her application form to Healthwise's office are immaterial. They do not demonstrate the existence of any barrier to her accessing Healthwise's physical facility. Nor do they indicate the existence of a barrier to her taking advantage of the goods and services that are available to individuals at Healthwise's physical facility.

Lenox's claim is not analogous to a claim that a video store has failed to remove a physical barrier depriving her of access to the facility and the goods and services available therein. Rather, her complaint is that a policy that excludes heart transplants but permits other types of transplants is worth less to her than it is to a person with a different ailment. This complaint is exactly equivalent to construing Title III to compel a video store to stock closed caption video tapes because ordinary tapes are worth less to a deaf person than to one with normal hearing. *Parker* clearly rejected such a construction of Title III. Therefore, we affirm the district court's grant of summary judgment in favor of Healthwise on Lenox's claim under Title III.

## B. *Lenox's Claims Under Titles I and II of the ADA are Untenable*

*Parker* is also dispositive of Lenox's claims under Titles I and II of the ADA. The premise central to all of Lenox's claims under the ADA is that the exclusion at issue contains a disability-based distinction in violation of the ADA because it covers some transplants but not others. This premise is no longer tenable.

■ In subsection III.C of its opinion, entitled "The ADA Prohibits Only Discrimination Between the Disabled and Non–Disabled," the *en banc* majority in *Parker* explained that "the ADA does not mandate equality between individuals with different disabilities. Rather, the ADA prohibits discrimination between the disabled and the non-disabled." *Id.* at 1015–16. In reaching this conclusion, the majority adopted wholesale the reasoning from Rehabilitation Act cases decided by the Supreme Court and other circuits, as well as ADA cases from the Seventh, Eighth and Eleventh circuits. After discussing these cases, the *en banc* majority stated:

> In conclusion, we agree with those circuits that have extended the Supreme Court's holding in *Traynor v. Turnage [*485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988)] and *Alexander v. Choate* [469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985)] to the ADA. As the Court concluded regarding the Rehabilitation Act, the ADA similarly does not prohibit an insurance company from differentiating between different disabilities. The same policy is provided to all employees who, when they receive it, are not disabled but working. The fact that some may become disabled for different reasons does not amount to discrimination in providing the policy. The ADA simply does not mandate equality between individuals with different disabilities. Rather, the ADA, like the Rehabilitation Act, prohibits discrimination between the disabled and the non-disabled.

*Id.* at 1019.

Lenox's claim that the Healthwise insurance plan violates the ADA because it covers some types of transplants, but not heart transplants, is exactly the type of claim the above-quoted paragraph in *Parker* foreclosed. Therefore, we need not address whether the defendants are covered entities for purposes of Titles I and II because, even if they are, a question we do not reach, Lenox cannot use the ADA to complain about a dispari-

ty in treatment among individuals with different disabilities under the Healthwise plan.

Lenox tries to avoid this critical portion of the *Parker* opinion by arguing that the above-cited language is not only dicta, but that it is dicta predicated on a misreading of the precedents discussed by the *Parker* majority. Her arguments in this vein have absolutely no merit and rely on taking snippets of opinions completely out of context. And, even if this portion of *Parker* is dicta (a characterization with which we do not agree), it is well-reasoned, persuasive, and supported by eight members of this court. We see no reason not to follow it in this case. Accordingly, we affirm the district court's grant of summary judgment in favor of the defendants on Lenox's claims under Titles I and II of the ADA.

## IV

For the foregoing reasons the judgment of the district court is **AFFIRMED**.