**Bernard WALKER & Christina Adams, Plaintiff,**

v.

**CARNIVAL CRUISE LINES; Carnival Corporation; Unique Travel Agency; Andre's Travel Agency, Defendants.**

**No. C 98–2926 TEH.**

United States District Court, N.D. California.

Aug. 3, 1999.

---

John L. Burris, Esq., Law Offices of
John L. Burris, Oakland, CA, Paul L.
Rein, Esq., Timothy S. Thimesch, Esq.,

Law Offices of Paul L. Rein, Oakland, CA, for Plaintiffs.

Wayne F. Emard, Esq., Markus W. McMillin, Esq., Kaye, Rose & Partners, San Francisco, CA, Cynthia L. Mitchell, Esq., Norman J. Ronneberg, Jr., Esq., Booth Banning LLP, San Francisco, CA, Roger F. Allen, Esq., Oakland, CA, for Defendants.

## ORDER RE: MOTIONS TO DISMISS

HENDERSON, District Judge.

This is a suit under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, California Health & Safety Code § 19955, and California Civil Code § 54.1. Plaintiffs allege that defendants failed to provide appropriately accessible accommodations on a cruise ship. Presently before the Court are two motions to dismiss. Defendants, Carnival Cruise Lines and Carnival Corporation (collectively "Carnival"), have moved to dismiss or transfer the case on the grounds that the passenger ticket contracts at issue contain forum selection clauses requiring suit to be filed in Florida. Unique Travel Agency and Andre's Travel Agency (the "Travel Agents"), move to dismiss on grounds that they are not liable for Carnival's ADA violations.

### I. FACTUAL BACKGROUND

Plaintiffs Bernard Walker and Christina Adams each took separate 3–4 day trips on the Holiday, a ship owned and operated by Carnival. Walker made arrangements through Unique Travel prior to his departure on July 28, 1997. He received his tickets through his neighbor, an employee with Unique Travel, within a week of his departure. Unique Travel was informed that Walker was disabled, used a wheelchair, and would require a disabled accessible guest room as well as disabled accessible facilities on the Holiday. Despite receiving assurances from Unique Travel and from Carnival that his room and the ship were disabled accessible, Walker discovered on his voyage that neither his room nor the ship were in fact accessible.

Adams, who booked passage with Andre's Travel Agency on the Holiday, is also disabled and uses a wheelchair. She received her tickets 10 days before her departure on September 12, 1997, and was given assurances by her travel agent that her room and the ship were disabled accessible. She had an equally disappointing voyage and both have filed suit alleging, among other things, that defendants violated the ADA's equal access requirements.

### II. DISCUSSION

#### A. Carnival's 12(b)(3)

██ A motion to dismiss premised on the enforcement of a forum selection clause should be treated as a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir.1996). Accordingly, the pleadings are not accepted as true and facts outside the pleadings may be considered by the district court. *Id.* Federal law governs the validity of a forum selection clause, *id.*, and where a maritime contract is involved, its interpretation is governed by the general maritime law of the United States. *See The Moses Taylor*, 71 U.S. (4 Wall.) 411, 18 L.Ed. 397 (1866); *Kendall v. American Hawaii Cruises*, 704 F.Supp. 1010, 1018 (D.Hawai'i 1989).

██ Carnival argues that plaintiffs' tickets contain a Florida selection clause the enforceability of which was recently upheld by the Supreme Court in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In *Shute*, the Supreme Court considered whether Carnival's forum selection clause was enforceable in the context of a federal suit brought in Washington state by residents who suffered personal injuries on a Carnival cruise. The Shutes claimed that the Florida forum selection clause was not enforceable because it was not the subject of negotiation between the cruise line and its passengers. The Shutes also claimed

that they were physically and financially incapable of proceeding with the litigation in Florida. The Supreme Court rejected these arguments, holding that the forum selection clause was reasonable. First, the Court noted that "it would be entirely unreasonable for us to assume that respondents—or any other cruise passenger— would negotiate with petitioner the terms of a forum-selection clause in an ordinary commercial cruise ticket. Common sense dictates that a ticket of this kind would be a form contract the terms of which are not subject to negotiation, and that an individual purchasing the ticket will not have bargaining parity with the cruise line." 499 U.S. at 593, 111 S.Ct. 1522. Thus a passenger cannot assert the absence of negotiation over a forum selection clause as a reason against enforcing it where no such negotiation is likely to take place.

■ The Court went on to list several reasons why a non-negotiated forum selection clause may be "permissible": (1) limiting the fora in which a cruise line is subject to suit avoids the possibility of litigation in multiple fora which could result from a single accident given the variety of places passengers hail from; (2) judicial economy is served by designating, *ex ante,* the forum for dispute resolution since parties and the courts will be spared the time and expense of motion practice to determine the appropriate forum; (3) passengers "benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued." *Id.* at 593–94, 111 S.Ct. 1522. Accordingly, the Supreme Court reaffirmed the rule in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 17, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), that parties' challenging a forum selection clause bear a " 'heavy burden of proof,' " to establish that the provision should be set aside. *Shute,* 499 U.S. at 595, 111 S.Ct. 1522. Absent evidence that enforcement would be fundamentally unfair (i.e., that the a particular forum was chosen "as a means of discouraging cruise passengers from pursuing legitimate claims," that accession to the forum provision was obtained by "fraud or overreaching," or that notice was inadequate), a forum selection clause must be given effect. *Id.*

Here, plaintiffs present three arguments against enforcement of Carnival's forum selection clause: (1) that they did not receive notice of the forum provision, (2) that the cancellation policy in the passenger contract nullifies the forum provision even if plaintiffs had constructive notice, and (3) that the forum provision cannot trump the strong public policy of enforcing rights created under the ADA and parallel state civil rights laws. Each of these arguments is without merit.

■ In the Ninth Circuit, as elsewhere, the adequacy of notice given by boilerplate language in a passenger contract is a question of law determined by assessing whether a particular provision was "reasonably communicated" to the passenger. *Dempsey v. Norwegian Cruise Line,* 972 F.2d 998, 999 (9th Cir.1992) (following *Deiro v. American Airlines, Inc.,* 816 F.2d 1360, 1364 (9th Cir.1987)). This is a two-pronged inquiry. First, a court must examine " '[f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question ....' " *Deiro,* 816 F.2d at 1364 (quoting *Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 864 (1st Cir.1983)). Second, a court must evaluate the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract such as "the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.* As long as both the ticket and the surrounding circumstances indicate that the provisions of a passenger contract were reasonably communicated, a passenger need not have actually read the contract to be deemed on notice of its terms. *See Shankles,* 722 F.2d at 864 (the

contract need only "reasonably communicate to the passenger the existence therein of important terms and conditions which affect legal rights").

■ Here the circumstances indicate that Carnival's forum provision was 'reasonably communicated to plaintiffs. The first page of the contract contains a conspicuous, underlined, all caps warning in 1/8″ font stating: *"IMPORTANT NOTICE TO GUESTS."* Immediately underneath this text are two short all caps 1/16″ font paragraphs which read as follows:

> This document is a legally binding contract issued by carrier to, and accepted by, guest subject to the important terms and conditions appearing on the following six pages. The provisions of the following pages of this contract are incorporated as though fully rewritten on the face of this contract.
>
> Notice: The attention of guest is especially directed to clauses 1, 3, 5, 6, 7, 8, 9, 11, 12, 14, 16, 21, 22, and 24, which contain important limitations on the rights of guest to assert claims against carrier, the vessel or any of their agents or employees.

The forum selection provision is specifically referenced as clause 8. It appears on the fourth page and provides:

> It is agreed by and between the guest and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A. to the exclusion of the Courts of any other state or country.

Before the individual clauses are recited, the second page of the contract admonishes the passenger in underlined all caps 1/8″ font and 1/16″ font as follows:

> *IMPORTANT TERMS AND CONDITIONS OF CONTRACT—READ CAREFULLY*
>
> In Consideration of the receipt in full of the cruise fare, Carrier agrees to transport Guest on the Vessel and above

specified voyage on the following terms and conditions:

Thus, the physical characteristics of the Carnival ticket make clear that it is a written contract containing important provisions for passengers to understand. Other courts have held that 1/8″ headlines and 1/16″ warnings are reasonably communicative. *See Marek v. Marpan Two, Inc.,* 817 F.2d 242 (3d Cir.1987). Moreover, plaintiffs point to nothing in the physical characteristics of their tickets to suggest that the forum provision and admonitions to read the contract terms are unreasonably drafted or difficult to understand.

Turning to the surrounding circumstances, Carnival also distributes and makes available a cruise brochure. Travel agents are instructed to give the brochure to passengers "to acquaint them with a Carnival cruise prior to their decision to book one." Seco Decl. ¶ 11. The brochure contains a section entitled "Things to Know Before You Go" which has the following statement in bold print:

> Cruise passage is subject to the terms and conditions shown on the Carnival Cruise Lines "Terms and Conditions of Passage Contract Ticket" (copies available upon request), including the procedure for the resolution of disputes which must take place in Florida.

Walker concedes that he was given the Carnival brochure at the same time that he received the tickets; Adams claims that she never received a brochure but admits that she was shown pages of one at her travel agent's office. Walker Supp. Decl. ¶ 3; Adams Supp. Decl. ¶ 3.

Moreover, Walker admits that he saw the " 'notice' on the front of the ticket *referring to the 'importance' of reviewing the 'contract'* at 'pages 1 through 7.'" Walker Decl. at ¶ 13 (emphasis added). Although he claims that he did not find any numbered pages and that the first seven pages contained a series of "coupons, solicitations and 'notices,'" he concedes that he later discovered the contract

pages at the back of the ticket booklet. This suggests that he may not have thoroughly examined the ticket when he first received it despite reading the admonition on the first page. Adams, who is legally blind, failed to have the contract clauses read to her even though she obtained assistance reading other portions of the ticket from her travel agent. She claims that her travel agent "purported to read everything of 'importance' to [her] .... She never, however, read the 'contract' to me...." Adams Decl. ¶ 19.

It is well settled that passengers need not have actually read a ticket to be bound by the terms contained therein. *See Strauss v. Norwegian Caribbean Lines, Inc.,* 613 F.Supp. 5, 8 (E.D.Pa.1984) ("The face of the passenger contract ticket contains a conspicuous notice directing the passenger's attention to the contractual terms contained on the inside. Under such circumstances, courts have uniformly held the passenger bound by the contractual terms contained in the contract, despite the fact that the passenger may not have read the contract.") (citing additional authority); *see also Gomez v. Royal Caribbean Cruise Lines,* 964 F.Supp. 47, 50 (D.Puerto Rico 1997) (same). The issue is simply whether passengers had an opportunity to read their tickets. *See Barkin v. Norwegian Caribbean Lines,* 1988 A.M.C. 645, 650 (D.Mass.1987) ("It is misleading to focus on whether she actually read the contract; *rather the proper focus is on whether she had the opportunity to read it....* That plaintiff chose not to read the ticket does not negate that fact that NCL reasonably communicated the terms of the contract ....") (emphasis added), *followed in, Kendall,* 704 F.Supp. at 1016–17 (failure to read ticket which contained time limitation for filing suit does not affect enforceability of provisions where plaintiffs had opportunity to apprise themselves of the contract terms even though actual page with the time limitation was missing); *see also Geller v. Holland–America Line,* 298 F.2d 618, 619 (2d Cir.), *cert. denied,* 370 U.S. 909, 82 S.Ct. 1256, 8 L.Ed.2d 403

(1962) (enforcing ticket contract provision where plaintiff never opened envelope containing ticket). Courts have even held that a travel agent's possession of the ticket is sufficient to charge passengers with constructive notice of the ticket provisions. *See Gomez,* 964 F.Supp. at 50–51 (imputing knowledge of contract terms to passengers based on travel agent's knowledge and duty to advise of terms; noting that "courts have ... held that notice of important conditions of a passage contract can be imputed to a passenger who has not personally received the ticket or possession thereof. The ticket may be received by passengers themselves or by their travel agent.") (citing additional authority); *Hicks v. Carnival Cruise Lines, Inc.,* 1995 A.M.C. 281, 288–89 (E.D.Pa.1994). Here plaintiffs and/or their travel agents received their tickets within at least several days of their trips, affording them ample opportunity to read the terms and conditions contained therein. *See Roberson v. Norwegian Cruise Line,* 897 F.Supp. 1285, 1289 (C.D.Cal.1995) (notice of ticket provisions sufficient where plaintiff admitted to receiving ticket three to four days before departure). Under these circumstances, the Court concludes that Carnival's forum selection clause was reasonably. communicated to plaintiffs.

Citing *Corna v. American Hawaii Cruises, Inc.,* 794 F.Supp. 1005 (D.Hawai'i 1992), plaintiffs next argue that even if they had read the forum provision upon receipt of the ticket, Carnival's cancellation policy gave them no reasonable opportunity to reject the provision. In *Corna,* plaintiffs received their tickets just two to three days before departure and, under the terms of the contract, "would have forfeited the entire ticket price if they canceled their trip at that time." *Id.* at 1011. Thus, in sharp contrast to *Shute* where the passenger had the option of rejecting the contract with impunity, "plaintiffs did not have an option to reject the cruise contract without forfeiting several thousand dollars." *Id.* For this reason the court held

the forum selection clause unreasonable and declined to enforce it against the plaintiffs.

Carnival's cancellation policy is printed as clause 26 of the passenger ticket. It provides that for 3 to 4 day cruises, cancellations anywhere from 29 to 4 days before departure require a $100 charge. Cancellations made within 3 days of departure result in forfeiture of the cruise fare.[1] Here, Adams received her ticket ten days before departure, so cancellation would only have resulted in a $100 charge per passenger. Although Walker claims he received his ticket less than a week before departure, he offers no evidence to establish that he got his ticket less than 4 days from departure. Moreover, he admits that before he received the ticket, it was in the possession of his friend who worked for Unique Travel. Thus if Walker had taken the opportunity to read the ticket and objected to the forum selection clause, the $100 cancellation charge would have applied. This relatively minor charge is not an unreasonable infringement on either plaintiff's option to reject the ticket contract. *Corna* is therefore distinguishable. *See also Hicks*, 1995 A.M.C. at 287–88 (distinguishing and declining to follow *Corna* where passenger received ticket from travel agent the night before departing and would have had to forfeit her entire fare in order to reject the terms of a forum selection clause; holding that nothing prevented passenger "from obtaining her tickets or information concerning its terms at an earlier date").

■ Finally, plaintiff presents a rather tortured argument that a recent Supreme Court decision regarding the enforceability of an arbitration clause in a collective bargaining agreement, *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), applies here to preclude "waiver" of plaintiffs' right to sue in their home forum. In *Wright*, the Supreme Court considered whether a general arbitration clause could be invoked to preclude a union member from filing in federal court for violations of the ADA. The Court reasoned that the statutorily created "right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA." 525 U.S. ——, 119 S.Ct. at 396. In other words, in order to waive rights to a judicial forum for federal claims of employment discrimination, the CBA must be "clear and unmistakable." *Id.* Plaintiff cites *Wright* for the proposition that the ADA represents a strong public policy and that there is no clear and unmistakable "waiver of rights to sue in California federal courts for violation of the anti-discrimination provisions of Title III of the ADA where there is no mention in the Carnival Cruise Lines ticket of such a waiver ...." Plf's Opp. Mem. at 10–11.

The forum selection clause is, of course, just such a waiver. *Wright*, in any event, is completely inapposite. First, it involves a CBA and the question of arbitrability, not an individual passenger contract. Indeed, the Supreme Court specifically distinguished the question before it from "an individual's wavier of his own rights"—a situation in which "the 'clear and unmistakable' standard [is] not applicable." 119 S.Ct. at 397. Second, an exclusive arbitration clause is radically different from a forum selection clause. If an arbitration clause is applied to an ADA claim, the plaintiff is deprived of a judicial forum; the forum provision here simply requires that any suit against Carnival be brought in a Florida court. Finally, plaintiff offers nothing to show that *Wright* has any application outside the union/CBA/arbitration clause context. Certainly, there is nothing in the opinion to suggest a broader reach.

## B. Travel Agents' 12(b)(6) Motion

### 1. Legal Standard

■ Dismissal is appropriate under Rule 12(b)(6) when a plaintiff's allegations

---

1. The cancellation policy is also reprinted in the "Things to Know Before You Go" section of the cruise brochure.

fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true the factual allegations of the complaint and indulge all reasonable inferences to be drawn from them, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal,* 10 F.3d 667, 670 (9th Cir.1993); *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Unless the Court converts the Rule 12(b)(6) motion into a summary judgment motion, the court may not consider material outside of the complaint. *Lucas v. Department of Corrections,* 66 F.3d 245, 248 (9th Cir.1995); *Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994). Documents attached to the complaint and incorporated therein by reference, however, are treated as part of the complaint for purposes of Rule 12(b)(6). *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). In addition, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting it into one for summary judgment. *Branch,* 14 F.3d at 454; *see also Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir.1998).

 The Court must construe the complaint liberally, and dismissal should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir. 1998); *Johnson v. Knowles,* 113 F.3d 1114, 1117 (9th Cir.1997); 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1990). Dismissal without leave to amend is appropriate only where a court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996); *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987). Rule 12(b)(6) dismissals are reviewed *de novo*

by the appellate court. *Stone v. Travelers Corp.,* 58 F.3d 434, 436–37 (9th Cir.1995).

## 2. *Merits*

 The Travel Agents move to dismiss on the grounds that the complaint fails to state a claim against them under the ADA. First, the Travel Agents argue that they are not liable for Carnival's compliance *vel non* with the ADA. Since the prohibition on discrimination in access to places of public accommodations applies only to owners, lessees, lessors, and operators, 42 U.S.C. § 12182, the Travel Agents claim that they fall outside the scope of the ADA. The Court agrees. Insofar as plaintiffs would hold the Travel Agents liable for the condition of the Holiday, they have obviously failed to state a claim. The Travel Agents are bereft of control over Carnival's fleet—they do not own, lease or operate Carnival's ships—and therefore cannot be held responsible for the ships' accessibility to disabled persons.

However, plaintiffs contend that the Travel Agents are independently liable under the ADA for failing to adequately research, and for misrepresenting, the disabled accessible condition of the Holiday. Essentially, plaintiffs assert that the service provided by the Travel Agents, quite apart from the cruise provided by Carnival, violates the ADA to the degree that disabled travelers are unable to obtain accurate information about the accessibility of their means of transport. The complaint alleges that Unique Travel was informed that Walker was "a disabled person who used a wheelchair and would require a disabled accessible guest room and disabled accessible facilities on the Boat in order to be able to use and enjoy the Boat's facilities." Compl. ¶ 10. Carnival's brochure identified his guest room as "modified for disabled," and Walker "called Carnival Cruise Lines directly during the week prior to his trip and was again assured that the Boat and his guest room were disabled accessible, including a 'roll in' shower in his guest room." *Id.*

The complaint further alleges that Walker "relied on these representations and would not have purchased tickets for this cruise had he known that the 'Holiday' boat, in fact, was *not* accessible ...." Compl. ¶ 11 (emphasis original). Adams was similarly "assured by Defendant Andre's Travel Agency ... that her needs as a disabled wheelchair user would be accommodated on the boat," and her assigned room was also listed in the Carnival brochure as "'modified for disabled.'" Compl. ¶ 13. Based on these facts, the complaint asserts that defendants "misrepresented" that the guest rooms and other facilities were disabled accessible. Compl. ¶¶ 16, 19.

 The ADA provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, *services*, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a) (emphasis added). The statute further clarifies that "discrimination" under section 12182(a) includes:

(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations; (iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied

services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden ....

42 U.S.C. § 12182(b)(2)(A). Thus the ADA places an affirmative duty on owners and operators of places of public accommodation to make reasonable accommodations and to take steps to ensure that disabled persons have equal access to the goods and *services* such places offer.

 Travel agents fall squarely within the ADA's definition of public accommodations.[2] The question is whether, quite apart from the physical accessibility of the Travel Agent's office, the ADA also covers the disabled accessibility of the services these agents provide. More precisely, plaintiff's complaint raises the question whether travel agents can be held liable under the ADA not simply for denying their services to disabled customers outright, but for failing to modify or adjust their services so as to meet the needs of the disabled customers they do serve.

The terms of the statute forcefully suggest that the ADA covers the latter scenario. Travel information—details about the nature and price of various travel accommodations—is perhaps the primary "service" offered by travel agents. Inadequate or inaccurate information regarding the disabled accessibility of travel accommodations for disabled travelers deprives them of equal access to or "full and equal enjoyment of" travel information services. Section 12182, plainly requires service providers to "make reasonable modifications in policies, practices, or procedures when

2. According to 42 U.S.C. § 12181(7):
The following private entities are considered public accommodations for purposes of this subchapter, if the operations of such entities affect commerce -
(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service,

shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment.

such modifications are necessary to afford ... services ... to individuals with disabilities," and to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services ...." 42 U.S.C. § 12182(2)(A). Obtaining appropriate information regarding the disabled accessibility of potential travel facilities upon the request of a disabled customer is a reasonable modification in the policy, practice, or procedure of a travel agent and a step necessary to ensure that disabled persons are not treated differently than other individuals in using travel services.

This construction of section 12182 is also consistent with the statute's purpose and legislative history. The explicit purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities ... [and] to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. § 12101(b). As the First Circuit has noted, "[i]n drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities." *Carparts Dist. Ctr. v. Automotive Wholesaler's,* 37 F.3d 12, 19 (1st Cir.1994) (citing S.Rep. No. 116, 101st Cong., 1st Sess. at 58 (1989)). Accurate information regarding disabled accessibility of accommodations is essential to making realistic travel plans and a basic requirement of equal access to travel services.

 Two arguments militate against this conclusion. First, there is a line of

authority developing outside the Ninth Circuit holding that the mandates of Title III of the ADA speak only to *physical* access. *See Lenox v. Healthwise of Kentucky, Ltd.,* 149 F.3d 453, 456–57 (6th Cir. 1998) (holding that plaintiff may not proceed under Title III against health insurer which refused to cover costs of heart transplant; "Even if the policy is deemed a good or service provided by a place of public accommodation, [plaintiff] is not complaining about physical access to a place of public accommodation or her ability to avail herself of the goods and services offered at a place of public accommodation, such as an insurance company office.") (following *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006, 1011 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998)); *Ford v. Schering–Plough Corp.,* 145 F.3d 601, 612–14 (3d Cir.1998) (plaintiff fails to state a claim against insurer under Title III because disability benefits are not "public accommodations" and there is no question of physical access to the insurer's office), *cert. denied,* —— U.S. ——, 119 S.Ct. 850, 142 L.Ed.2d 704 (1999); *cf. Carparts,* 37 F.3d at 18–20 ("public accommodations" are not limited to actual physical structures, thus Title III covers claim by plaintiff with HIV against insurer which placed allegedly discriminatory cap on health benefits for individuals with AIDS); *Chabner v. United of Omaha Life Ins. Co.,* 994 F.Supp. 1185, 1190–93 (N.D.Cal.1998) (holding that "Title III applies to insurance underwriting practices"; refusing to find that Title III "deals solely with physical barriers to access"); *Doukas v. Metropolitan Life Ins. Co.,* 950 F.Supp. 422, 424–27 (D.N.H.1996) (same). This Court perceives no legitimate reason to depart from the conclusion reached in *Chabner* and the authorities upon which it rests. The language of Title III cannot reasonably be read to require physical access alone.[3]

---

**3.** As the court noted in *Chabner:*

Finding that Title III applies only to physical barriers to entry would render mean-

Second, *Lenox, Ford and Parker* also hold that although Title III requires goods and services to be provided in a non-discriminatory manner, it does not require places of public accommodation to change the "nature or mix" of those goods and services. The following portion of a Justice Department regulation is invoked by both the Third and Sixth Circuits to justify this construction of the statute:

> The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided. In other words, a bookstore, for example, must make its facilities and sales operations accessible to individuals with disabilities, but is not required to stock Brailled or large print books. Similarly, a video store must make its facilities and rental operations accessible, but is not required to stock closed-captioned video-tapes.

28 C.F.R. pt. 36, app. B, at 640 (1997); *see Lenox,* 149 F.3d at 456–57 (plaintiff's "complaint is that a policy that excludes heart transplants but permits other types of transplants is worth less to her than it is to a person with a different ailment. This complaint is exactly equivalent to construing Title III to compel a video store to

stock closed caption video tapes because ordinary tapes are worth less to a deaf person than to one with normal hearing. *Parker* clearly rejected such a construction of Title III."); *Ford,* 145 F.3d at 613 ("Just as a bookstore must be accessible to the disabled but need not treat the disabled equally in terms of books the store stocks, likewise an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled").

Although the breadth of the Justice Department regulation is debatable,[4] the plain language of section 12182(b) (which provides standards for the construction of the general rule against discrimination by public accommodations set forth in section 12182(a)), casts doubt on the notion that, under all circumstances, the nature of the services provided need not be modified for disabled persons.[5] In any event, the issue raised by the Justice Department regulations is not presented in this case since here we deal with travel agents who purported to offer information regarding disabled accessibility upon request. The question is simply whether travel agents who provide information regarding accessibility must do so in a non-discriminatory manner. Based on the analysis above, the Court has no doubt that this question must be answered in the affirmative. Having

---

ingless the provisions providing for equal access to goods and services. *See* 42 U.S.C. § 12182(b)(1)(A)(ii). In addition, the sections dealing with modifications in policies to ensure "goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" would similarly be superfluous.
994 F.Supp. at 1190.

**4.** The regulation is an appendix commentary on another regulation specifically addressing whether public accommodations are required to alter their regular stock of inventory to include goods designed for the disabled. *See* 28 C.F.R. § 37.307. The underlying regulation mandates public accommodations to order accessible or special goods upon request if the establishment is in the habit of taking special orders for unstocked goods. Nothing is said about services.

**5.** See especially sections 12182(b)(2)(A)(ii) and (iii). The former requires modifications in "policies, practices or procedures" and the latter requires any steps necessary not just to ensure that no individual with a disability is excluded, denied services, or segregated, but steps necessary to ensure that such individuals are not *"otherwise treated differently* than other individuals because of the absence of auxiliary aids and services ...." *Id.* Both requirements are also qualified by a balancing test which accounts for the very concern addressed in the Justice Department regulation: modifications and steps are not required if the establishment can show that such changes "would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation ...." *Id.*

said as much, the Court hastens to note that, on the facts of this case, it may turn out that the Travel Agents have performed the duties required by Title III insofar as they appear to have relied on representations provided by Carnival regarding the disabled accessibility of the Holiday. In terms of the methods and sources for obtaining travel information, Title III may require no more than what travel agents normally do for non-disabled customers. But this conclusion is premature and properly reserved for a more developed record.

### III. CONCLUSION

Accordingly, and good cause appearing, Carnival is HEREBY DISMISSED as a defendant in this case and the Travel Agents' motion to dismiss is HEREBY DENIED as to the ADA cause of action.[6]

**IT IS SO ORDERED.**

---

6. The Court will not rule on Carnival's motion in the alternative to transfer the case under 28 U.S.C. § 1404 since it was added in an amended motion which does not comply with the Local Rules. In view of the above ruling, plaintiffs' cause of action under Cal. Civil Code § 54.1 survives. See especially subsection (d) of section 54.1. However, as plaintiffs failed to oppose the motion with respect to Health & Safety Code § 19955, this cause of action is dismissed.