Andres GOMEZ, et al., Plaintiffs,

v.

**ROYAL CARIBBEAN CRUISE LINES, et al., Defendants.**

Civil No. 96–2325(SEC).

United States District Court,
D. Puerto Rico.

May 8, 1997.

Silvia Del–Rosario–Sanfeliu, San Juan, PR, for Plaintiffs.

José E. Alfaro–Delgado, Calvesbert, Alfaro & López Conway, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is a the motion for transfer of venue filed by defendant Royal Caribbean Cruises Ltd. ("RCCL") (**Docket # 17**). Upon review of the parties' arguments and the applicable law, defendants' motions for transfer is **GRANTED**.

### Factual Background

■ RCCL is a Liberian corporation having its principal place of business in Miami, Florida, which operates several cruise ships, some of which, as the "LEGEND OF THE SEAS", ("Legend") depart from San Juan, Puerto Rico.[1]

On or about September 1995, codefendant A & A Tours (A & A)[2] requested of RCCL certain reservations for the December 27, 1995 cruise of the Legend. The reservations were requested of A & A by Andrea Travel & Tours, Inc. (Andrea Travel) as travel agent for plaintiffs, Andres "Bubo" Gomez and Josefina Gomez ("the Gomez") and Maritza Gomez de Negron and Ramon Negron ("the Negrons"). The Gomez booked cabin 8002 and the Negrons booked cabin 8559. RCCL received full payment for the bookings on or about December 1995.

1. We note that plaintiffs have failed to submit a separate statement of material facts in dispute, in violation of Local Rule 311.12. This Court recently addressed the importance of this rule:

All too frequently, litigants before the District Court of Puerto Rico overlook the importance of the anti-ferret rule in the summary judgment stage: Local Rule 311.12. Without such a rule, the Court would have to search through the record, with or without the assistance of counsel, for lurking evidence of a genuine issue of material fact ... Local Rule 311.12 prevents "the recurring problem of 'ferreting through the record'" and "the specter of district judges being unfairly sandbagged by unadvertised factual issues." ... It requires the party moving for summary judgment to file a separate, short, and concise statement of material facts that supports its claim that there is no genuine issue of material fact in dispute. *These facts are deemed admitted unless the non-moving party files a similarly separate, short, and concise statement of material facts demonstrating that there is a genuine issue in dispute.*
Dominguez v. Eli Lilly & Co., 958 F.Supp. 721, 726 (D.P.R.1997).

In view of plaintiffs' noncompliance, we admit defendant's facts as admitted and adjudicate the present controversy pursuant to those facts.

2. A & A is RCCL's international representative in the Caribbean, who as such, has the non-exclusive right to sell cruise vacations on vessels operated by RCCL, though travel agents in the Caribbean.

The Cruise Brochure published by RCCL contains the terms and conditions applicable to RCCL cruises, and includes, *inter alia*, the forum selection clause and RCCL's cancellation and refund policies. (Docket # 17, Exhibit 1 of Alina Castellanos' Affidavit) In the usual course of business, the passengers' travel agency provides the passengers with copies of the Cruise Brochure or otherwise informs them of the cancellation, refund and other applicable booking terms and conditions. Upon making final payment, passengers booking in Puerto Rico receive a travel voucher from A & A which advises them to be familiar with the conditions applicable to the cruise. Passengers receive their Ticket Contract during the embarkation procedure, before boarding the vessel. Passengers must sign the first page of the ticket, acknowledging receipt, below a warning that reads:

> This is your cruise ticket contract. It is important that you read all terms of this contract (pp. 1–4). This ticket is not transferable and is not subject to alteration by the passenger.

On December 27, 1995, the day of departure from Puerto Rico, the Gomez did not board the cruise liner. The Gomez notified A & A on such date that they would not be boarding the vessel since their son was hospitalized after suffering a heart attack, but that they hoped to board the vessel at a later port of call. A & A attempted to arrange with the pier personnel for RCCL to hold the Gomez's cabin and to allow the Negrons to use the cabin until the Gomez's boarded the cruise.

After the LEGEND departed from San Juan, RCCL notified the ship of the request to hold the Gomez's cabin and to let the Negrons use it, but RCCL's ship board staff had assigned cabin 8002 to other passengers pursuant to RCCL procedures in a "no show" or "failure to be onboard" situation.

Andrea Travel notified A & A on December 29, 1995 that the Gomez would not be boarding the vessel at any later port of call. That same day, Andrea Travel requested a full refund for the fare paid for cabin 8002. On or about June 10, 1996, the Gomez were granted a credit equal to the full amount of the fare paid for cabin 8002, redeemable on any future RCCL sailing. The amount of the credit included the amount of the commission paid to Andrea Travel for the booking.

The cruise of the LEGEND ended on January 6, 1996. According to defendants, the first notice of plaintiffs' claim to RCCL was by means of a letter from their attorney of record herein, Carmen de Jesus, Esq., dated July 12, 1996. Upon the parties' failure to resolve their dispute, plaintiffs filed the present lawsuit on October 30, 1996.

On April 10, 1997, RCCL requested a transfer of the present case to the United States District Court for the Southern District of Florida, based on the forum selection clause of the Ticket Contract, which requires litigation from the contract of passage to be filed or commenced in a court located in Miami, Florida. Clause 6 of the Ticket Contract provides:

> It is agreed by and between passenger and carrier that all disputes and matters whatsoever arising under, in connection with or incident to this contract shall be litigated, if at all, in and before a court located in Miami, Florida, U.S.A., to the exclusion of the courts of any other state, territory or country. Passenger hereby waives any venue or other objection that he may have to any such action or proceeding being brought in any court located in Miami, Florida.

We proceed to examine defendant's argument.

### Applicable Law/Analysis

The Supreme Court upheld the validity of an identically worded provision in *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In that case, the Court found that the petitioner cruise line could validly include a choice of forum for litigation in its passenger contract, without violating Congress' statutory prohibition against contractual clauses which unduly limited a vessel owner's liability for negligence. In *Shute,* The Court noted:

> Including a reasonable clause in a form contract of this kind, well may be permissible for several reasons: first, a cruise line has a special interest in limiting the fora in

which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several fora. (Citations omitted) Additionally, a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. (Citations omitted). Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued. (Citations omitted) 499 U.S. at 593–94, 111 S.Ct. at 1527–28.

### Reasonable Communicativeness Test

The Supreme Court based its determination of the validity of the forum selection clause on the "reasonable communicativeness" test. The First Circuit has played a leading role in defining the elements of the two-pronged test. *See Shankles v. Costa Armatori,* 722 F.2d 861 (1st Cir.1983).

■ The reasonableness of the notice afforded to a passenger in a ticket contract is a question of law for the court. *Deiro v. American Airlines, Inc.,* 816 F.2d 1360, 1364 (9th Cir.1987). In *Lousararian v. Royal Caribbean Corp.,* 951 F.2d 7, 8–9 (1st Cir. 1991), the First Circuit explained the two prongs of the test as follows:

First, a court must examine the facial clarity of the ticket contract and whether its language and appearance make the relevant provisions sufficiently obvious and understandable. The second prong focuses on 'the circumstances of the passenger possession and familiarity with the ticket,' *id.,* which involves scrutiny of 'any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake,' *id.* (Citation omitted). Given this two-step analysis, it

is obvious that the determination of enforceability must be made on a case-by case basis . . . (citing *Shankles,* 722 F.2d at 864–66).

■ The courts have unequivocally stated that once the terms and conditions of a ticket contract have been "reasonably communicated" to the passenger, they are enforceable, whether or not the passenger has actually read them. *Coleman v. Norwegian Cruise Lines,* 753 F.Supp. 1490, 1497 (W.D.Mo.1991) (citing *Barbachym v. Costa Line, Inc.,* 713 F.2d 216, 220 (6th Cir.1983)). The passenger has a contractual duty to read. *Id.* A passenger who chooses not to read, assumes the risk of such omission. *Deiro,* 816 F.2d at 1365.

■ The courts have also held that notice of important conditions of a passage contract can be imputed to a passenger who has not personally received the ticket or possession thereof. The ticket may be received by passengers themselves or by their travel agent. *Marek v. Marpan Two,* 817 F.2d 242, 247 (3rd Cir.1987); *see also Kientzler v. Sun Line Greece Shipping Co.,* 779 F.Supp. 342 (S.D.N.Y.1991) (circumstantial evidence indicated that ticket contract was received by a co-worker of the plaintiff, as agent.); *DeCarlo v. Italian Line,* 416 F.Supp. 1136, 1137 (S.D.N.Y.1976) (passenger can be charged with knowledge of the provisions of a ticket in possession of a friend or relative.)

■ Furthermore, the "reasonable communicativeness test" does not require that the ticket call the passenger's attention to the specific pages in which important conditions may appear. *Fagan v. Royal Caribbean Cruises, Ltd.,* 1992 AMC 2553, 2556, 1992 WL 361704 (D.N.J.1992) (citing *Marek,* 817 F.2d at 246.)

### RCCL's Ticket Contract Reasonably Communicated the Terms of the Contract to the Negrons and the Gomez

■ Upon examination of the ticket contract, we hold that such provisions are clearly stated and understandable. Notice of RCCL's forum selection clause is conspicuously set out in the Ticket Contract, high-

lighted within a box. The ticket contains a notice of this important provision in the cover and in the first page. Finally, the ticket calls the passenger's attention to the specific pages where the contract terms and conditions appear. (Affidavit of Maria Elena Hernandez, Exhibit 2)

Plaintiffs may claim that they lack knowledge pursuant to their failure to board the LEGEND on December 27, 1995, and thus can not be bound by the Forum Selection Clause. However, defendants argue, and this Court agrees, that notice and knowledge of RCCL's forum selection clause can be imputed to them from more than one source.

As plaintiffs acknowledge in their complaint, the Negrons traveled aboard the Legend and received their Ticket Contract. Plaintiffs allege, among other claims, that the Negrons were not allowed to use the cabin originally assigned to the Gomez. The complaint alleges that plaintiff Maritza Negron is the Gomez's daughter. Thus, the Negrons' knowledge of the Contract terms is imputable to the Gomez. *See DeCarlo*, 416 F.Supp. at 1137.

Finally, the Gomez's travel agent, Andrea Travel, who took upon itself to make the claims on plaintiffs' behalf, was informed of said provisions. The Gomez received A & A's travel voucher and were alerted of their duty to familiarize themselves with the conditions applicable to the cruise. Moreover, it is the travel agent's duty to deliver to the Gomez a copy of the Cruise Brochure or otherwise advise them of the terms applicable to RCCL's cruises. (Castellanos Affidavit, ¶ 9).

The forum selection clause in RCCL's Cruise Brochure reads as follows:

Any dispute between a passenger and Royal Caribbean in connection with a passenger's cruise booking or cruise shall be litigated, if at all, in and before a court located in Miami, Florida, U.S.A., to the exclusion of the courts of any other state, territory or country.

 Accordingly, the Gomez can also be imputed with the knowledge of the provisions of the Cruise Brochure. Upon making a reservation and paying the fare they became bound by the provisions of the Cruise Brochure. These were antecedent or preparatory acts in the formation of a contract of passage.[3] Pursuant to the above discussion, we find that RCCL's ticket contract reasonably communicated the terms of the contract to the Negrons and the Gomez, and thus, are subject to the forum selection clause.

### The Forum Selection Clause is Fundamentally Fair

[9] The Supreme Court also noted that a forum selection clause must not only meet the "reasonable communication" standard, but it also must be considered "fundamentally fair." In this regard, the plaintiff has a "heavy burden of proof" of inconvenience, and a forum selection clause will be enforced absent evidence of "fraud or overreaching" *Schute*. Other courts have required a showing of "grave difficulty" in litigating at the cruise line's choice of forum, in order to invalidate a forum selection clause on grounds of "unfairness." *Compagno v. Commodore Cruise Line*, 1995 AMC 276 (E.D.La. 1994) ("forum will be so gravely difficult and inconvenient that (she) will for all practical purposes be deprived of (her) day in court" citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972)); *see also Cooper v. Carnival Cruise Lines, Inc.*, 1992 AMC 2852, 1992 WL 137012 (S.D.N.Y.1992) (passenger has "heavy burden" to prove inconvenience of selected forum; affidavit by plaintiff alleging "physical and financial hardship" was found insufficient to discharge plaintiff's burden in this regard.)

 Upon review of the forum selection clause in the present case, we find that it is fair and reasonable. The Court does not discern any evidence suggesting that defendants included such clause due to bad faith or for "overreaching" purposes. *See Colby v. Norwegian Cruise Lines*, 921 F.Supp. 86, 88 (D.Conn.1996); *Shute*, 499 U.S. at 594–96, 111 S.Ct. at 1527–29. As noted by defendants, the clause reflects the fact that RCCL has its principal place of business in Miami and many of its ships routinely call in the Port of Miami on an ongoing basis. We find

---

**3.** A contract of passage may be "express or implied", and entails "paying a fare or some other consideration to the carrier." Schoenbaum, Thomas, J. Admiralty and Maritime Law, Vol. 1, § 5–5, p. 169 (2d ed.1994), citing *The Vueltabajo*, 163 F. 594, 596 (S.D.Ala.1908).

that the "salutary considerations" enumerated in *Shute* are very pertinent to the case at hand. Compliance with the forum selection clause saves "time and expense of pretrial motions" for all parties involved and the Court as well. The unequivocal language of the clause also dispels confusion regarding the proper venue vis-a-vis passenger disputes. This efficient resolution of the proper venue leads to reduced fares, a trickle down benefit for all passengers.

Plaintiffs may argue that it would be burdensome and inconvenient for them as residents of Puerto Rico to defend a suit in the Miami forum. Indeed, the Court acknowledges that it is burdensome and inconvenient, to a greater or lesser degree for *any* party to litigate on a foreign forum. However, based on the circumstances of this case, we conclude that the enforcement of RCCL's forum selection clause would not gravely or unduly inconvenience plaintiffs. Miami is approximately two-and-a half hours flying time from Puerto Rico. As noted by defendants, the allegations of the complaint suggest that plaintiffs are frequent, experienced travelers. Forum selection clauses imposing much more onerous burdens have been enforced. *Hodes v. S.N.C. Achille Lauro* ed Altri–Gestione, 858 F.2d 905, 916 (3rd Cir.1988), *cert. denied,* 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (New Jersey plaintiff sent to litigate in Naples, Italy); *Hollander v. K–Lines Hellenic Cruises, S.A.,* 670 F.Supp. 563, 566 (S.D.N.Y.1987) (approving transfer to Greece); *Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 10 (2d Cir.1995) (requiring U.S. plaintiff to litigate in Greece).

In view of the above discussion, we hereby **transfer** the case to the United States District Court for the Southern District of Florida. Judgment shall follow accordingly.[4]

**SO ORDERED.**

---

4. We note that plaintiffs' opposition failed to properly address the pertinent case law with regards to the United States District Judge forum selection clause, discussing instead the agency relationship between A & A and RCCL and the allegedly monopolistic control of defendants over cruise travels. (**Docket # 19**) While we issue no opinion on the merits of these claims, we conclude that plaintiffs' opposition fails to sway the Court from transferring the case to the proper venue in Florida.