**VEGA–PEREZ, et al., Plaintiff(s)**

v.

**CARNIVAL CRUISE LINES,**
**et al., Defendant(s).**

**Civil No. 04–2358(JAG).**

United States District Court,
D. Puerto Rico.

March 16, 2005.

Dennis A. Simonpietri–Monefeld, Dennis A. Simonpietri Law Office, Guaynabo, PR, for Plaintiffs.

Manolo T. Rodriguez–Bird, Mayra M. Gonzalez–Reyes, Jimenez, Graffam & Lausell, San Juan, PR, for Defendants.

**OPINION AND ORDER[1]**

GARCIA–GREGORY, District Judge.

Pending before this Court is Defendants' Motion to Dismiss for Improper Venue (Docket No. 19). Having reviewed the filings, the Court hereby **DENIES** the Motion to Dismiss for Improper Venue, but transfers the case to the appropriate venue.

*FACTUAL BACKGROUND* [2]

Plaintiffs Mayra Vega Perez and Wilfredo Ramos Rosado, parents of Jan Carlos Ramos Vega and Kiven Wilfredo Ramos Vega, (collectively, "plaintiffs") authorized their sons to take Carnival's Destiny cruise trip with their grandparents, and other relatives, from December 7 to 14, 2003. Jan and Kiven's mother had planned to go on this trip. However, Mrs. Vega was not able to board the cruise because her employer would not allow her to travel on those dates. Jan and Kiven stayed in cabins 2281 and 2286 with their grandparents and relatives.

On December 14th, 2003, while the ship was docked at the San Juan Bay for disembarkment, the family was called to the immigration and customs area for inspec-

---

1. The Court's jurisdiction to entertain this case is based on 28 U.S.C. § 1332 (diversity of citizenship).

2. The factual background is taken from plaintiffs' complaint

tion of the articles purchased during the trip. They were temporarily lodged by Carnival Cruise's employees in the discotheque area until their party was called to disembark. The discotheque area had entertainment-arcade-equipment such as pinball machines and air hockey machines. During the wait at the discotheque area, Jan and Kiven went to play in the arcade area with a friend they had met onboard. While they were playing at a close distance from their relatives, Jan tripped on the rug and slit his left cheek with an air hockey machine that had a protruding piece of metal at the bottom part of the machine, where the puck comes out. Jan was immediately taken to the medical assistance area inside the cruise ship. Jan was first tended to by a nurse and then by Dr. Carlos Olivan Martinez, who indicated he did not have the appropriate thread to stitch the wound and, should he attempt to do so, there would be a lot of scaring. Dr. Carlos Olivan decided to put three butterfly stitches in the wound so that the family could take Jan to a hospital having the appropriate supplies.

At the time of the accident, Mayra Vega and Wilfredo Ramos were waiting for their family to disembark. When Mayra Vega saw Jan's wound after he exited the vessel, she started to cry uncontrollably and became very anxious because the wound was still bleeding, even though it had three butterfly stitches. After they left the dock area, Mayra Vega and Wilfredo Ramos took Jan to the Morovis Community Hospital in order to have the facial injury stitched properly and to obtain some medication for Jan's pain. The injury was cleaned and 4 new butterfly stitches were placed in the wounded area. Jan was also given antibiotics and pain medication. This hospital also lacked the proper stitching for a child's injury. The physician, however, considered butterfly stitches to be sufficient.

## PROCEDURAL BACKGROUND

On December 10, 2004, Plaintiffs filed a personal injury action against the above-named Defendants for events that had occurred on December 14, 2003. On February 15, 2005, defendant Carnival filed a Motion to Dismiss the action for improper venue (Docket No. 4). The Defendants move to dismiss the action because the passage contract contains a forum selection clause that designates Miami, Florida, as the exclusive forum for resolution of disputes arising from the contract of passage. The Defendants claim that the ticket contract, as well as the travel brochure, "reasonably communicates" the forum selection clause to the passengers.[3] Accordingly, the defendants seek dismissal under the forum selection clause contracted by the parties.

On February 25, 2005, the Court granted an extension of time until March 11, 2005 for Plaintiffs to file an opposition to the Motion to Dismiss for Improper Venue. To this day, said motion stands unopposed.

*Motion to Dismiss for Improper Venue under Rule 12(b)(3)*

■ The First Circuit construes a motion to dismiss premised on a forum selection clause "as one alleging failure to state

---

3. The forum selection clause on the ticket contract states as follows:

It is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this contract shall be litigated, if at all, in and before the United States Court for the Southern District of Florida Court located in Miami, Florida, or as to those lawsuits to which the Federal Court of the United States lack subject matter jurisdiction, before a Court located in Miami–Dade County Florida, USA, to the exclusion of the Courts of any other state or country. (See Docket No. 4 at Exh.1 ¶ 15).

a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6)". *Silva v. Encyclopedia Britannica, Inc.*, 239 F.3d 385, 387 (1st Cir.2001). In Puerto Rico, there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum selection clauses. *Id.* at n. 1. As a rule, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances" *The Bremen v. Zapata Off-Shore, Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513(1972); *Outek Caribbean Distribs., Inc. v. Echo, Inc.*, 206 F.Supp.2d 263 (D.P.R.2002). Since the clause is mandatory, the Court will enforce it unless "enforcement would be unreasonable and unjust, or ... the clause [is] invalid for such reasons as fraud or overreaching." *Zapata*, 407 U.S. at 15, 92 S.Ct. 1907; *see also Miro Gonzalez v. Avatar Realty, Inc.*, 177 F.Supp.2d 101, 104 (D.P.R.2001)(noting that when the parties agree to a forum selection clause, the resisting party must show the unreasonableness of enforcement under the circumstances).

## Applicable Law/Analysis

The Supreme Court of the United States has upheld the validity of forum selection clauses in passenger contracts. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Recently, in *Reynolds–Naughton v. Norwegian Cruise Line*, 386 F.3d 1 (1st Cir.2004) the First Circuit reiterated the validity of forum selection clauses in cruise line passenger ticket contracts. The First Circuit has established a two-pronged test to evaluate the legitimacy of forum selection clauses under a "reasonable communicativeness" standard. The First Circuit explained the two prongs as follows:

First, a court must examine the facial clarity of the ticket contract and whether its language and appearance make the rel-

evant provisions sufficiently obvious and understandable. The second prong focuses on the "circumstances of the passenger *possession* and familiarity with the ticket," which involves scrutiny of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake. (Emphasis added) *See Shankles v. Costa Armatori,* 722 F.2d 861, 864–866 (1st Cir.1983); *Lousararian v. Royal Caribbean Corp.,* 951 F.2d 7, 8–9 (1st Cir.1991).

Courts have stated that once the terms and conditions of a ticket contract have been "reasonably communicated" to the passenger, they are enforceable, whether or not the passenger actually reads them. *See Gomez v. Royal Caribbean Cruise Lines,* 964 F.Supp. 47, 50 (D.P.R.1997)(*citing Coleman v. Norwegian Cruise Lines,* 753 F.Supp. 1490 (W.D.Mo.1991)). Furthermore, Courts have also held that notice of important conditions of a passage contract can be imputed to a passenger who has not personally received the ticket or possession thereof. *Marek v. Marpan Two,* 817 F.2d 242, 247 (3rd Cir.1987); see also *Kientzler v. Sun Line Greece Shipping,* 779 F.Supp. 342 (S.D.N.Y.1991) (circumstantial evidence indicated that ticket contract was received by a co-worker of the plaintiff, as agent.).

The Supreme Court also noted that a forum selection clause must not only meet the "reasonable communication" standard, but it also must be considered "fundamentally fair." In this regard, the plaintiff has a "heavy burden of proof" of inconvenience, and a forum selection clause will be enforced absent evidence of "fraud or overreaching" *Shute,* 499 U.S. at 594–596, 111 S.Ct. 1522. Other courts have required a showing of "grave difficulty" in litigating at the cruise line's choice of forum, in order to invalidate a forum selection clause on grounds of "unfairness."

*See Gomez v. Royal Caribbean Cruise Lines*, 964 F.Supp. 47, 51 (D.P.R.1997).

■ Given the fact that the Plaintiffs presumably became aware of the forum selection clause at the moment they received the travel tickets, the Court finds that plaintiffs were "reasonably communicated" the terms and conditions of such passage contract. Furthermore, upon review of the forum selection clause in the present case, the Court finds that it is fair and reasonable. Given this finding of validity, the forum choice is therefore enforceable. Notwithstanding, even if the Court assumes that Plaintiffs would have argued, in a timely filed opposition, that it would be burdensome and inconvenient to defend a suit in the Miami forum, the Court would still be inclined to find that the enforcement of Carnival's forum selection clause would not gravely or unduly inconvenience plaintiffs since Miami is a relatively close litigation forum to Puerto Rico.

## CONCLUSION

In light of the aforementioned, the Court **DENIES** the Motion to Dismiss for Improper Venue but **transfers** the case to the United States District Court of Southern District of Florida.

IT IS SO ORDERED.