Luz R. Diaz MORALES,
et al., Plaintiff(s)

v.

ROYAL CARIBBEAN CRUISES,
LTD., et al., Defendant(s).

Civil No. 05–1615 (JAG).

United States District Court,
D. Puerto Rico.

Feb. 27, 2006.

---

Antonio Bauza–Torres, Cond. Le Mans, Hato Rey, PR, for Plaintiffs.

Mayra M. Gonzalez–Reyes, Jimenez, Graffam & Lausell, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On June 8, 2005, Plaintiffs Edwin Vazquez Ortiz ("Vazquez") and his wife, Luz R. Diaz Morales ("Diaz") (collectively "Plaintiffs") filed a personal injury action against Royal Caribbean Cruises, Ltd. ("RCC") (Docket No. 1). On September 26, 2005, RCC moved to dismiss the complaint for improper venue (Docket No. 7). On October 26, 2005, Plaintiffs filed an opposition (Docket No. 10). For the reasons discussed below, the Court **DENIES** the motion to dismiss, but transfers the case to the appropriate venue.

## FACTUAL BACKGROUND[1]

On September 5, 2003, Vazquez and Diaz, boarded the vessel Serenade of the Seas, owned and operated by RCC. At approximately 5:00 a.m. on September 6, 2003, Diaz noticed that her husband was experiencing lack of sensibility and mobility and that his mouth appeared twisted. Diaz immediately contacted the ship's medical ward, but was unable to effectively communicate her husband's condition due to the fact that none of the personnel spoke Spanish and she did not speak English. Diaz then tried putting her husband on the phone with the medical personnel, since he spoke English, but his debilitated condition did not allow him to explain the situation effectively. The staff at the medical ward made no attempt to seek a translator for Diaz, nor did they send help to the cabin. Diaz then found another passenger who was able to successfully communicate the emergency to the medical staff. At that point, RCC personnel arrived at the couple's cabin and Diaz was informed by an individual who identified himself as a doctor, that her husband had suffered a stroke and would need to remain under observation for approximately 24 hours as well as undergo some tests. Diaz then told the doctor that two years earlier, her husband had suffered a heart attack.

Later on, the doctor informed Diaz that her husband would be evacuated from the ship via helicopter unless he signed a document releasing the doctor and RCC from liability in the event that his condition deteriorated. After discussing the options, Vazquez informed the doctor that he would sign the release form. Nevertheless, he was told that RCC had already made the decision to evacuate him because it was its policy not to accept passengers with heart conditions. RCC personnel then asked Diaz to sign invoices amounting to $1,960.00, for medical services provided to her husband during the four hours he spent at the ship's medical ward. Diaz did not understand the invoices, since they were in English. At a later time, RCC staff informed Diaz that Vazquez would be taken via helicopter to a hospital in Vancouver, Canada, but that there would be no room for her to accompany him. They

---

1. The relevant facts are taken from Plaintiffs' complaint (Docket No. 1).

also told Diaz that she could disembark the next day and meet her husband in Vancouver.

A few hours later, after Vazquez had been evacuated, RCC personnel informed Diaz that her husband was not taken to Vancouver but to an island by the name of Prince Ruppert instead. Diaz was not able to see her husband for four days. Pursuant to arrangements made by RCC, Diaz spent a night at a hotel in Vancouver, took a two hour cab ride to the airport and then a flight to Prince Ruppert island in order to finally meet with her husband. She paid for all the expenses related to these travel arrangements out of pocket. Meanwhile, Vazquez's medical bills at Prince Ruppert quickly amounted to $6,500.00, even though he was not able to undertake the necessary tests because he had no family members with him to provide the necessary consent and assurance of payment. Despite several attempts by Diaz to postpone payment to RCC and RCC's alleged promise to allow it, Diaz and Vazquez ran out of money while at Prince Ruppert island and had to secure a line of credit with their bank in Puerto Rico in order to return to the island.

## DISCUSSION

A. *Standard for Motion to Dismiss for Improper Venue under Rule 12(b)(3)*

█ The First Circuit has held that "a motion to dismiss based on a forum-selection clause is treated as one alleging the failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6)." *Silva v. Encyclopedia Britanni-*ca, *Inc.*, 239 F.3d 385, 387 (1st Cir.2001). In Puerto Rico, there is no conflict between federal common law and Puerto Rico law regarding the enforceability of forum selection clauses. *Id.* at n. 1. As a rule, forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off–Shore, Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513; *Outek Caribbean Distribs., Inc. v. Echo, Inc.*, 206 F.Supp.2d 263 (D.P.R.2002). Since the clause is mandatory, the Court will enforce it unless "enforcement would be unreasonable and unjust, or . . . the clause [is] invalid for such reasons as fraud or overreaching." *Zapata*, 407 U.S. at 15, 92 S.Ct. 1907; *see also Miro Gonzalez v. Avatar Realty, Inc.*, 177 F.Supp.2d 101, 104 (D.P.R.2001)(noting that when the parties agree to a forum selection clause, the resisting party must show the unreasonableness of enforcement under the circumstances).

B. *Defendant's Motion to Dismiss*

█ RCC claims that the forum selection clause is fully enforceable in this case because its terms "were clearly communicated by a simple reading of the contract."[2] Accordingly, the defendant seeks dismissal under the forum selection clause contracted by the parties. Plaintiffs argue that the forum selection clause on the ticket contract is unenforceable because it is a contract of adhesion that did not allow the Plaintiffs to negotiate its terms. Furthermore, they argue that they were not put

---

**2.** The forum selection clause on the ticket contract states as follows:

It is agreed by and between the Guest and Carnival that all disputes and matters whatsoever arising under, in connection with or incident to this contract shall be litigated, if at all, in and before a court located in Miami, Florida, U.S.A., to the exclusion of the courts of any other state, territory or country. Passenger hereby waives any venue or other objection that he may have to any such action or proceeding being brought in any court located in Miami, Florida. (See Docket No.7 at Exh.1 ¶ 11).

on notice of the terms of the clause at the time they purchased the tickets, but rather at a later time, when they actually received them. The defendant replies that "for purposes of enforcing the forum selection clause, it does not matter when the passenger was reasonably communicated of the terms of the passenger contract."

The Supreme Court of the United States has upheld the validity of forum selection clauses in passenger contracts. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Recently, in *Reynolds–Naughton v. Norwegian Cruise Line*, 386 F.3d 1 (1st Cir.2004), the First Circuit reiterated the validity of forum selection clauses in cruise line passenger ticket contracts.

■ The First Circuit has established a two-pronged test to evaluate the legitimacy of forum selection clauses under a "reasonable communicativeness" standard. First, a court must examine the facial clarity of the ticket contract and whether its language and appearance make the relevant provisions sufficiently obvious and understandable. The second prong focuses on the "circumstances of the passenger possession and familiarity with the ticket," which involves scrutiny of any extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake. *See Shankles v. Costa Armatori*, 722 F.2d 861, 864–866 (1st Cir.1983); *Lousararian v. Royal Caribbean Corp.*, 951 F.2d 7, 8–9 (1st Cir. 1991).

Courts have stated that once the terms and conditions of a ticket contract have been "reasonably communicated" to the passenger, they are enforceable, whether or not the passenger actually reads them. *See Gomez v. Royal Caribbean Cruise Lines*, 964 F.Supp. 47, 50 (D.P.R.1997) (*citing Coleman v. Norwegian Cruise Lines*, 753 F.Supp. 1490 (W.D.Mo.1991)).

Furthermore, Courts have also held that notice of important conditions of a passenger contract can be imputed to a passenger who has not personally received the ticket or possession thereof. *Marek v. Marpan Two*, 817 F.2d 242, 247 (3rd Cir. 1987); *see also Kientzler v. Sun Line Greece Shipping*, 779 F.Supp. 342 (S.D.N.Y.1991) (circumstantial evidence indicated that ticket contract was received by a co-worker of the plaintiff, as agent).

■ The Supreme Court has also noted that a forum selection clause must not only meet the "reasonable communication" standard, but must also be considered "fundamentally fair." *Shute*, 499 U.S. at 595, 111 S.Ct. 1522. In this regard, the plaintiff has a "heavy burden of proof" of inconvenience, and a forum selection clause will be enforced absent evidence of "fraud or overreaching." *Id.* at 594–595. Other courts have required a showing of "grave difficulty" in litigating at the cruise line's choice of forum, in order to invalidate a forum selection clause on grounds of "unfairness." *See Gomez v. Royal Caribbean Cruise Lines*, 964 F.Supp. 47, 51 (D.P.R.1997).

With regards to the negotiation of passenger ticket contracts, the Supreme Court has stated that it would be "entirely unreasonable" to assume that a cruise line would negotiate with its passengers the terms of a forum selection clause in an ordinary cruise ticket. *See Shute*, 499 U.S. at 593, 111 S.Ct. 1522. Although common sense dictates that an individual purchasing a ticket will not have bargaining parity with a cruise line, "[i]ncluding a reasonable forum clause in a form contract of this kind well may be permissible for several reasons." *See Id.* The Supreme Court lists three reasons that make a reasonable forum selection clause permissible: (1) a cruise line has special interest in limiting the fora in which it may be subject

to suit, since the plurality of the passengers' residences would expose it to litigation in several different fora; (2) the effect of dispelling confusion ex ante about where claims arising from the ticket contract must be brought and defended results in an economy of time and expenses for litigants; and (3) the passengers receive benefits in the form of reduced fares that reflect the savings enjoyed by the cruise line because the fora is limited. *See Id.* at 593–594 (citations omitted).

It is unclear from the facts of this case when exactly the Plaintiffs received their passenger tickets, but it can be understood that it was some time before they boarded the cruise ship. The Plaintiffs are deemed to have become aware of the forum selection clause the moment they received the ticket. The terms of the forum selection clause in this case are set out in the ticket contract in a manner that is clear and understandable. The cover of the ticket contains a notice alerting the passenger that it is important that all the terms of the contract are read and specifically points to the section containing the forum selection clause (Docket No. 12, Exhibit 1, page 1). Additionally, the forum selection clause appears in the ticket contract in capital letters, setting it apart from the other clauses contained in the contract (Docket No. 12, Exhibit 1, page 3). Therefore, the Court finds that the terms of the forum selection clause were "reasonably communicated" to the Plaintiffs.

The Court also finds that, in the present case, the forum selection clause is fair and reasonable. Although there is some inherent inconvenience in *any* party having to litigate its claims in a foreign forum, Florida is not a remote forum with regard to Puerto Rico since it is easily accessible by a relatively short flight from the island. It is therefore not gravely difficult for the Plaintiffs, who are residents of Puerto Rico, to litigate in the state of Florida. Moreover, there is no indication that RCC incurred in fraud or overreaching in order to obtain consent by the Plaintiffs to the forum selection clause. The Court, having found that the forum selection clause is valid, finds that the forum choice is enforceable.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion to dismiss. The Clerk of the Court, however, is hereby **ORDERED** to transfer this case to the United States District Court of Southern District of Florida.

IT IS SO ORDERED.