SHEPHERD, J.,
concurring.
I write further in this case only to offer the following additional considerations to balance those suggested by the dissent.[2]
The issue in these cases is whether the respective trial courts erred by enforcing a forum-selection clause in form contracts issued by Carnival Cruise Lines to four of its fare-paying customers, which requires that
all disputes and matters whatsoever arising under, in connection with or incident to this Contract or the Guest’s cruise ... shall be litigated, if at all, before the United States District Court for the Southern District of Florida in Miami, or as to those lawsuits to which the Federal Courts of the United States lack subject matter jurisdiction, before a court located in Miami-Dade County, Florida....
(emphasis added). The dissent is disturbed that the natural workings of the clause deprive Florida citizens, foreign citizens, and all persons whose claims have a value of less than $75,000 of what it considers to be “a clear right to a jury trial in Florida’s state courts ... without notice or consent.” See infra p. 576. The dissent finds the existence of this “right” in a federal statute — the historic Savings to Suitors Clause, now codified in the Judicial Code of the United States at 28 U.S.C. § 1333, but which has existed substantially unchanged in the Statutes of the United States since the inferior federal courts were established by the First Congress of the United States. See Judiciary Act of 1789 Ch. 20, § 9, 1 Stat. 77 (1789).[3] After *569 locating this right in federal statutory law, the dissent then argues, by reference to federal case law, that if an express contractual waiver of the right to a jury trial under the Seventh Amendment of the United States Constitution can only be enforced if made “knowingly and voluntarily,” so also must the effect of a forum-selection clause in a maritime passenger cruise ticket, which, as the dissent admits, see infra p. 581, merely “inadvertently limit[s]” the ability of some passengers to obtain a jury trial. The dissent further argues the effect of the clause is simply “fundamentally unfair” within the meaning of federal maritime law as it applies to form cruise ship contracts of passage. I will treat each argument in turn.
First, the federal Savings to Suitors Clause confers no enforceable state court “right” to a jury trial or anything else on a maritime plaintiff. In fact, it is oxymoronic under our federal system of government to think that the United States Congress has the power to command a state court to exercise its jurisdiction to do anything. See U.S. Const, art. III, § 2; U.S. v. Butler, 297 U.S. 1, 68, 56 S.Ct. 312, 80 L.Ed. 477 (1936) (“[T]he United States is a government of delegated powers, [and] those [powers] not expressly granted, or reasonably to be implied ... are reserved to the states or to the people.”). Rather, history demonstrates that the Savings to Suitors Clause was inserted in the First Judiciary Act “probably, from abundant caution, lest the exclusive terms in which the [admiralty and maritime] power is conferred on the District Courts might be deemed to have taken away the concurrent remedy which had before existed.” See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 444, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001) (quoting N.J. Steam Navigation Co. v. Merchants’ Bank of Boston, 47 U.S. (6 How.) 344, 390, 12 L.Ed. 465 (1848)); see also supra p. 568-69, fn. 3. More importantly for our discussion here, it also is evident, when viewed in a historical context, the insertion of the Clause in the First Judiciary Act had nothing to do with any affinity of the First Congress for juries in admiralty or maritime matters. In fact, history proves just the opposite.
During the decade before the Constitutional Convention, most Americans had little experience with any courts which had jurisdiction beyond the boundaries of their own states. See Henry J. Borguignon, The Federal Key to the Judiciary Act of 1789, 46 S.C.L.Rev. 647, 652 (Summer 1995). However, some of the participants in the Convention knew first hand that admiralty jurisdiction had international ramifications. Id. at 653. Disputes involving capture and prize[4] were prevalent. *570 See Raymond S. August, Trial by Jury in a Court of Admiralty: A Constitutional Right buried under Historical Ignorance, 13 J. Mar. L. & Com. 149, 167-68 (1982); see also 1 Steven F. Friedell, Benedict on Admiralty § 81 (7th rev. ed. 2006). In many states, cases in admiralty were treated as most other cases, which meant their trial by jury. See August, 13 J. Mar. L. & Com. at 168-69. Procedure and jurisdiction in these courts were “uncontrolled and divergent.” See 1 Thomas J. Schoenbaum, Admiralty and Maritime Law §§ 1-6 (4th ed.2004). Because juries were pre-dis-posed to decide these cases based upon local prejudice — rather than by law or justice — -hostility, both interstate and international, manifested. David W. Robertson, Admiralty and Federalism 101 (1970). For these reasons, as the delegates to the Constitutional Convention arrived in Philadelphia in 1787, there was general agreement that a system of national admiralty courts was needed to ensure uniformity in the treatment of maritime cases involving both prize and instance. See Schoenbaum, supra at §§ 1-6.[5] The delegates’ method for so doing was to include in the judicial article of the proposed Constitution a provision that “[t]he judicial Power shall extend to ... all cases of admiralty and maritime jurisdiction.” U.S. Const, art. Ill, § 2.
Except for the establishment of the United States Supreme Court, however, the organization of the federal courts was not self-executing. See U.S. Const. art. Ill, § 1. Rather, it fell to the First Congress to organize the lower courts of the United States. See Judiciary Act of 1789 Ch. 20, 1 Stat. 77 (1789). In so doing, the First Congress reposed in “district courts” the “exclusive cognizance of all civil causes of admiralty and maritime jurisdiction.” Judiciary Act of 1789 Ch. 20, § 9, 1 Stat. 77 (1789). To enhance uniformity, the Congress further provided that “trials of issues in fact, in the [United States] District Courts, in all causes except civil causes of admiralty and maritime jurisdiction, shall be by jury.” Id. (emphasis added). In a bow to historical custom, however, the Congress also resolved to “sav[e] to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it.” Id. When viewed in its historical context, it is self-evident the Savings to Suitors Clause was not inserted in the Judiciary Act of 1789 as some type of federal über guarantee of a particular state constitutional right. By asserting that “the grant [by that Congress] of concurrent jurisdiction to state courts under the ‘savings to suitors’ provision essentially afforded [the cruise line passengers in this case] a fundamental right to a jury trial when filing certain admiralty and maritime claims in state court,” see infra p. 579 (emphasis added), the dissent trifles with history.[6],[7]
*571 Nor have the federal jury waiver cases — Sullivan v. Ajax Navigation Corp., 881 F.Supp. 906, 908 (S.D.N.Y.1995), Ginsberg v. Silversea Cruises Ltd., No. 03-62141-CIV, 2004 WL 3656827, at *1 (S.D.Fla. Mar. 18, 2004) and McDonough v. Celebrity Cruises, Inc., No. 98 Civ. 1517(RWS), 2000 WL 341115, at *1 (S.D.N.Y. Mar. 30, 2000) — which the dissent collectively hail as “[having] considered the issue before us,” see infra p. 582, done so. Unlike our case, each of these cases is a federal diversity case in which the cruise line operator, by sentient design, sought to divest each and every one of its passenger customers their absolute Seventh Amendment constitutional right to demand a jury trial on the law side of the federal court in the event of a dispute through the use of an express contractual waiver. See Sullivan, 881 F.Supp. at 908 (ticket contract requiring any action against the cruise line be “instituted in the United States District Court for the Southern District of New York as an admiralty or maritime action without demand for a jury trial.”) (emphasis added); Ginsberg, 2004 WL 3656827, at *1 (ticket contract providing “passenger agrees that all disputes and matters whatsoever arising in connection with the ticket shall be tried by the federal court ‘without jury.’ ”) (emphasis added). McDonough, 2000 WL 341115, at *1 (involving an express jury waiver under “virtually identical circumstances” to Sullivan). In sharp contrast, there is no evidence of sentient design by Carnival in this case.[8] Equally important, there is no federal constitutional issue before us. See Waring v. Clarke, 46 U.S. (5 How.) 441, 460, 12 L.Ed. 226 (1847) (“[W]e cannot see how [admiralty and maritime *572 trials] are to be embraced in the [S]eventh [A]mendment of the [C]onstitution[.]”); Curtis v. Loether, 415 U.S. 189, 193, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) (“[T]he [Seventh] [AJmendment [should] be construed to embrace all suits which are not of equity and admiralty jurisdiction[.]”). These cases offer no assistance to the dissent in this case.
Second, the enforcement of this clause is not “fundamentally unfair.” Again, we must remember that, as indicated by the dissent, these cases represent a narrow class of federal maritime disputes which the First Congress elected not to totally pre-empt from adjudication in state court. Accordingly, it is federal maritime law and not state substantive law or one’s subjective judgment that governs the enforceability of the clause. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (“[T]his is a case in admiralty, and federal law governs the enforceability of the forum-selection clause we scrutinize.”); Milanovich v. Costa Crociere, S.p.A., 954 F.2d 763, 766 (D.C.Cir.1992) (stating a cruise ticket is a maritime contract and the law to be applied is general federal maritime law).
It has only been in recent times that courts sitting in admiralty have had to examine the “fairness” of the substance of a forum selection clause in a maritime contract of passage because most courts have held such clauses to be void ab initio as “contrary to public policy.” See M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (The Bremen); see also Carbon Black Exp., Inc. v. The SS Monrosa, 254 F.2d 297, 300-01 (5th Cir.1958) (holding that “agreements in advance of controversy whose object is to oust the jurisdiction of the courts are contrary to public policy and will not be enforced”); Prince Steam-Shipping Co. v. Lehman, 39 F. 704, 704 (S.D.N.Y.1889) (holding the provision in the charter-party agreement “ousting the jurisdiction of all courts,” except those in Philadelphia, was “against public policy, and void”). Just thirty-seven years ago, however, the United States Supreme Court in The Bremen — expanding on a decision just eight years earlier in which it upheld the enforcement of a contractual waiver of service of process, see Nat’l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)—declared that forum-selection clauses are prima facie valid and enforceable under general maritime law.
In so holding, the Supreme Court in The Bremen was mindful that ocean-going vessels travel through many jurisdictions, thus potentially becoming subject to the laws of a particular jurisdiction based upon a fortuitous event of an accident. The Court reasoned that “[t]he elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting.” The Bremen, 407 U.S. at 13-14, 92 S.Ct. 1907. The Court continued, “in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside.” Id. at 15, 92 S.Ct. 1907. The challenging party must “clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.” Id.
In Shute, 499 U.S. at 593, 111 S.Ct. 1522 the United States Supreme Court further “refine[d] the analysis of The Bremen to account for the realities of form passage contracts” (emphasis added), such as the one in this case. Drawing upon the principles enunciated in The Bremen, the Court *573 in Shute concluded it was not “fundamentally unfair” under principles of general maritime law to enforce a non-negotiable predecessor clause to the one before us, which obligated Eulala Shute, a resident of Washington State who had suffered a shipboard injury off the coast of Mexico on a Carnival cruise she boarded in Los Ange-les, California, to travel to Florida to bring her claim. Shute, 499 U.S. at 588, 111 S.Ct. 1522.[9] The Court articulated those principles as follows:
As an initial matter, we do not adopt the Court of Appeals’ determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining. Including a reasonable forum clause in a form contract of this kind well may be permissible for several reasons: First, a cruise line has a special interest in limiting the fora in which it potentially could be subject to suit. Because a cruise ship typically carries passengers from many locales, it is not unlikely that a mishap on a cruise could subject the cruise line to litigation in several different fora. Additionally, a clause establishing ex ante the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions. Finally, it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued.
Id. at 593-94 (internal citations omitted) (emphasis added).
Evaluating the “reasonableness” of the forum clause at issue in that case, see id. at 592, 111 S.Ct. 1522 the Court went on to observe:
In this case, there is no indication that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate claims. Any suggestion of such a bad-faith motive is belied by two facts: Petitioner has its principal place of business in Florida, and many of its cruises depart from and return to Florida ports. Similarly, there is no evidence that petitioner obtained respondents’ accession to the forum clause by fraud or overreaching. Finally, respondents have conceded that they were given notice of the forum provision and, therefore, presumably retained the option of rejecting the contract with impunity. In the case before us, therefore, we conclude that the Court of Appeals erred in refusing to enforce the forum-selection clause.
Id. at 595, 111 S.Ct. 1522 (emphasis added). In our case, just as in Shute, there is no suggestion of bad faith motive on the part of Carnival. Nor is there any evidence of fraud or overreaching. Nor, finally, is there any evidence the plaintiffs will be mistreated or short-changed in any fashion by the judges of the United States District Court for the Southern District of Florida,[10] or that the judges will routinely *574 deny cruise ship passengers, such as these plaintiffs, jury trials if requested. The only evidence in the record of this case is that these plaintiffs and their successors will receive trials in courts specially established for this purpose, and which have more than 200 years of accumulated experience giving such trials. See Judiciary Act of 1789 Ch. 20, § 9, 1 Stat. 77 (1789) (establishing admiralty and maritime jurisdiction of federal courts). It is hard to fathom how this is “fundamentally unfair.”
Furthermore, again under federal maritime law, the passengers in these cases received the notice to which they were legally entitled. Cruise ship tickets contain a multitude of conditions and limitations.[11] There is no requirement under general maritime law that ticket recipients be advised of any unstated ramification of those limitations. Under federal maritime law, the only requirement is that the cruise ship operator “reasonably communicate to ... passenger[s] the existence [within the ticket] of important terms and conditions which affect legal rights[.]” Shankles v. Costa Armatori, S.P.A., 722 F.2d 861, 864 (1st Cir.1983) (emphasis added); Nash v. Kloster Cruise A/S, 901 F.2d 1565, 1566 (11th Cir.1990) (stating courts will enforce limitations in passenger cruise tickets if the ticket contract “provide[s] the passenger with reasonably adequate notice that the limit existed and formed part of the passenger contract”). The notice provided to the plaintiff passengers in this case appears in bold-faced type on the first page of their ticket contracts as follows:
IMPORTANT NOTICE TO GUESTS
THE GUEST TICKET CONTRACT IN THIS BOOKLET CONTAINS CONDITIONS ON NUMBERED PAGES 1 THROUGH 11 IN THE REAR PORTION OF THIS BOOKLET. YOUR ATTENTION IS DIRECTED TO THESE CONDITIONS, CERTAIN OF WHICH CONTAIN IMPORTANT LIMITATIONS ON THE RIGHTS OF *575 GUESTS TO ASSERT CLAIMS AGAINST THE CRUISE LINE, VESSEL OR THEIR AGENTS OR EMPLOYEES. PLEASE READ THE CONTRACT AND THESE TERMS AND RETAIN THE CONTRACT FOR FUTURE REFERENCE.
Federal maritime case law from two United States Courts of Appeal have approved the “reasonable communicativeness” of notices, which are indistinguishable in form, location on the ticket contract, and content from the notice received by the passengers in this case. See Marek v. Marpan Two, Inc., 817 F.2d 242, 246 (3d Cir.1987) (finding a notice printed in capital letters l/16th inch high on the top of a cruise ticket folder stating “ACCEPTANCE OF THIS TICKET CONSTITUTES A CONTRACT. THE TERMS AND CONDITIONS OF WHICH ARE SET FORTH FULLY INSIDE. PLEASE READ CAREFULLY[,J” “reasonably eommunicate[d] the existence and importance of terms inside, including the time limits in ticket paragraph six” for bringing suit against the ship owner); Nash, 901 F.2d at 1567-68 (finding a bold-faced notice on the first page of a passenger ticket contract, denominated “CONTRACT OF PASSAGE,” which bore “Passengers are advised to read the terms and conditions of the Passenger Contract Ticket set forth below. Acceptance of this Passenger Contract Ticket by Passenger shall constitute the agreement of Passenger to these Terms and Conditions[,]” constituted adequate notice of a one year time limitation for bringing suit contained in the contract) (emphasis added); see also Vega-Perez v. Carnival Cruise Lines, 361 F.Supp.2d 1, 3-4 (D.Puerto Rico 2005) (finding notice “reasonably communicated” simply where “[pjlaintiffs presumably became aware of the forum selection clause at the moment they received the travel tickets”). In addition, the United States District Court for the Southern District of Florida has found adequate notice in a passenger ticket containing the same forum selection clause as challenged by the plaintiffs in this case. See Carnival Corp. v. Middleton, 941 So.2d 421, 424 (Fla. 3d DCA 2006) (acknowledging that the United States District Court for the Southern District of Florida had enforced a forum-selection clause identical to the one before us over an objection based upon inadequate jury waiver). The guiding judicial principle in each of these cases appears to be that once notified, a ticket-holder will read and inquire.[12]
The paean to the “fundamental right to jury trial” under the United States and Florida constitutions found in the dissent is poignant. See infra p. 580-81. Its reminder — that any waiver of this fundamental right must be made knowingly and voluntarily — is gripping. See infra p. 581-83. The dissent forgets, however, that we are not dealing here with a judicial doc *576 trine surrounding jury waiver clauses. Rather, we are dealing with a judicially created doctrine for determining when it is appropriate to enforce a forum-selection clause in a maritime case. Because of the constitutional dimension incorporated in a federal or state jury waiver, there exists greater procedural protection in the exercise of such waiver than is required for the enforcement of a forum-selection clause. See David H. Taylor & Sara M. Cliffe, Civil Procedure by Contract: A Convoluted Confluence of Private Contract and Public Procedure in Need of Congressional Control, 35 U. Rich. L.Rev. 1085, 1114-16 (2002). Unlike jury waiver clauses, forum selection clauses have come to have a favored status. See The Bremen, 407 U.S. at 10, 92 S.Ct. 1907. For this reason, our High Court has placed “a heavy burden of proof’ on a party seeking to escape from his contract to make a “strong showing” that the clause should be set aside. Id. at 15, 17, 92 S.Ct. 1907. The showing required is “that trial in the contractual forum will be so gravely difficult and inconvenient that [a party] will for all practical purposes be deprived of his day in court.” Id. at 18, 92 S.Ct. 1907. As previously demonstrated, it can hardly be argued that it is “unreasonable” under the circumstances to enforce the forum selection clause in this case.
In sum, the dissents’ contention — namely that the passenger-appellants in this case are somehow the victims of a violation of constitutional proportions — has no basis in law or fact. The passengers’ grievance in this case lies with the United States Congress.[13]
GERSTEN, WELLS, SUAREZ, and LAGOA, JJ., concur.

. I would be remiss if I did not point out that my first preference in these cases would have been to deny the motion for rehearing en banc on the ground that it fails to meet the threshold for rehearing en banc as required by Florida Rule of Appellate Procedure 9.331. See Univ. of Miami v. Wilson, 948 So.2d 774, 790-91 (Fla. 3d DCA 2006) (Shepherd, J., concurring). Having been obviously unpersuasive on this point, I proceed to the merits.

.The Savings to Suitors Clause appeared as followed in section 9 of the Judiciary Act of 1789:
That the district courts shall have, exclusively of the courts of the several States ... exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under laws of impost, navigation or trade of the United States, where the seizures are made, on waters which are navigable from the sea by *569 vessels of ten or more tons burthen, within their respective districts as well as upon the high seas; saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it....
Since 1789, there have been just three changes in the Clause. See 28 U.S.C. §§ 41(3) and 371(3) (1940 ed.) (substituting the words "any other remedy to which he is otherwise entitled” for the words "the right of a common-law remedy where the common law is competent to give it”); Act of June 25, 1948, c. 646, 62 Stat. 931 ("saving to the libellant or petitioner in all cases all other remedies to which they are otherwise entitled”); Act of May 24, 1949, ch. 139, § 79, 63 Stat. 101 ("saving to suitors in all cases all other remedies to which they are otherwise entitled”).

. Prize in maritime law refers to the private property of an enemy that a belligerent captures on the high seas or that a belligerent authorizes to be taken by a privateer on its behalf. The national interest in the proper adjudication of cases of capture and prize is highlighted by the fact that the first national court created by the United States Congress was the Court of Appeals in Cases of Capture. See Comment, Powell v. Offshore Navigation, Inc.: Jurisdiction Over Maritime Claims and *570 the Rights to Trial by Jury, 82 Col. L.Rev. 784, 808 n. 164 (1982).

. On this point, Alexander Hamilton appears to have captured the sentiment, if not the spirit, of the day when he wrote in Federalist 80: "[T]he most bigoted idolizers of State authority have not thus far shown a disposition to deny the national judiciary the cogni-zances of maritime causes. These so generally depend upon the laws of nations, and so commonly affect the rights of foreigners, that they fall within the considerations which are relative to the public peace. The most important of them are, by the present Confederation, submitted to federal jurisdiction.” The Federalist, A Commentary on the Constitution of the United States: Alexander Hamilton, James Madison and John Jay 511 (Robert Scigliano, ed.. Random House 2000)(1787).

. The dissent tries to draw some solace from a single line in Lewis, 531 U.S. at 445, 121 S.Ct. 993, which characterizes the Savings to Suitors Clause as a "grant to state courts of in personam jurisdiction, concurrent with admiralty courts.” See infra p. 579. As I have previously indicated, however, see supra p. *571 569, the Lewis Court expressly recognizes just a few lines earlier, see Lewis, 531 U.S. at 444, 121 S.Ct. 993, that the Clause was "inserted probably, from abundant caution” lest Section 9 of the First Judiciary Act be misinterpreted to operate as a pre-emption clause. A casual perusal of the passages both before and after the line seized upon by the dissent makes plain that Lewis cannot be read so literally.

. While it may seem counter-intuitive today, the proceedings of the Constitutional Convention reflect that the proponents of enshrining an express right to a jury trial in the Constitution in civil cases, eventually accomplished by the adoption of the Seventh Amendment, were not motivated so much by a felt need to memorialize a revered right as out of a concern that the lifetime appointment of federal judges would make them partial to governmental interests. See Deborah J. Matties, A Case for Judicial Self-Restraint in Interpreting Contactual Jury Waivers in Federal Court, 65 Geo. Wash. L. Rev 431, 435-437 (March 1997); see also Benjamin V. Madison, III, Trial by Jury or By Military Tribunal for Accused Terrorist Detainees Facing the Death Penalty? An Examination of Principles that Transcend the U.S. Constitution, 17 U. Fla. J.L. & Pub. Pol'y 347, 393 (Dec.2006).

. Carnival's prior forum selection clause permitted its passengers to Ble suit in any court located in the State of Florida. See infra p. 573, fn. 9. Carnival states it modified the clause because experience had proven the United States District Court for the Southern District of Florida to be a "more efficient” forum for the resolution of passenger disputes. According to Carnival, the efficiencies include the availability of electronic filing, strict Federal Rule of Civil Procedure Rule 26 discovery requirements, limitations on the number of depositions, strict pre-trial calendar deadlines and trial settings, and a more vigorous summary judgment procedure for disposal of meritless claims. One might also consider that concentrating this federal maritime litigation before the twenty-two active judges of the United States District for the Southern District of Florida, rather than spreading the cases more broadly, fosters the creation of a cadre of professionals for whom the law of the sea is a familiar sight. See Schoenbaum, supra, at §§ 4-4, 4-5 (discussing the wide variety of in rem and statutory proceedings over which the federal courts have exclusive jurisdiction).

. The clause in Shute required that “all disputes ... arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country.” Id. at 587-88, 111 S.Ct. 1522.

. Although cast in the idiom of jury sanctity, I deduce from the arguments made that the *574 plaintiffs’ true concern is that the judges of the United States District Court somehow will be less favorable to them than a jury on issues of liability and compensation. However, analyses of empirical data from federal cases compiled by the Administrative Office of the United States Courts strongly suggest otherwise. See, e.g., Theodore Eisenberg, Judicial Decisionmaking in Federal Products Liability Cases, 1978-1997, 49 DePaul L.Rev. 323, 323 (1999) ("The striking difference in trial win rates between judge and jury trials continues. Plaintiffs prevail in over 40% of the judge trials and only about 30% of the jury trials.”); Carol J. DeFrances & Marika F.X. Litras, Civil Trial Cases and Verdicts in Large Counties, 1996, Bur. Justice Stats. Bui., Sept. 1999, at 1, 6 ("Plaintiffs were more likely to win in bench trial cases (62%) than in jury trial cases (49%).”); see also Thomas A. Eaton, et ah, Another Brick in the Wall: An Empirical Look at Georgia Tort Litigation in the 1990s, 34 Ga. L.Rev. 1049, 1084 (2000).

. The conditions and limitations in these passengers' ticket contracts ranged from the specific — limitations on liability for use of the ship's recreational and athletic equipment — to a final catch-all provision stating:
Carnival shall have the benefit of all Statutes of the United States providing for limitation and exoneration from liability and the procedures provide (sic) thereby, including but not limited to Sections 4282, 4282A, 4283, 4284, 4285 and 4286 of the Revised Statutes of the United States of America (USCA citation omitted); as well as all restrictions or exemptions from liability, when applicable, under the laws of any foreign nation.
One might wonder whether this provision is any more enigmatic to the ordinaiy cruise ship passenger than the forum selection clause that occupies our time in this case, or whether the effects of either clause would be a determining factor to a cruise decision by the dissent's hypothetically fully conversant cruise passenger.

. It should also be noted that Carnival’s cruise ticket contract was available for viewing on Carnival’s website during the time these passengers purchased their cruise vacations, and that the Welcome Aboard brochure included in the ticket packet provided to each passenger before embarking (containing the ticket contract, boarding pass(es), brochure, luggage tags and such other items as are needed pre-embarkation), meticulously and prominently directed each booked passenger to the terms and conditions of passage in the ticket contract as follows:
If you look at the cover of your ticket booklet, you will see an "Important Notice to Guests.” This notice directs your attention to the terms and conditions of your contract. It is important to read this and become acquainted with the specific conditions and limitations of your passage.

. The Congress is well aware of the prohibition which is the subject matter of the cruise passengers’ angst in this case. On two occasions, once in 1939 and then again in 1954, the Congress considered amending the Judiciary Act of 1789 to authorize jury trials in admiralty and maritime cases, but for reasons of its own has not done so. See Kenneth H. Volk, Case Note, Seamen's Personal Injury Claims-Suite in Admiralty-Jury Trial, 22 J. Mar. L. & Com. 607, 611 & n. 21 (1991) (citing House Committee on the Judiciary, H.R. 2723, 76th Cong., 1 Sess; S. Rep. 2351, 83 d Cong., 2d Sess. (1954)). Some cogently argue, even today, that the prohibition remains warranted. See Gary T. Sacks & Neal W. Settergren, Juries Should Not he Trusted to Decide Admiralty Cases, 34 J. Mar. L. & Com. 163 (Jan.2003).